SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized).

**State v. Jahnell Weaver (A-104-11) (069185)**

**Argued February 4, 2014 -- Decided September 8, 2014**

**CUFF, P.J.A.D. (temporarily assigned), writing for a unanimous Court.**

In this appeal, the Court addresses whether defendant is entitled to a new trial based upon the cumulative impact of several alleged errors, including the denial of defendant's application to use "reverse 404(b)" evidence, the denial of his motion for a separate trial, and the admission of an inadequately redacted statement.

On June 26, 2004, Jahnell Weaver (defendant) and Edward Williams argued outside of a graduation party in Camden, New Jersey. As the verbal altercation continued, someone drew a gun and fired five shots. Williams died from three gunshot wounds. Amyr Hill, a friend standing by Williams's side, was severely injured by two gunshot wounds. Defendant and his friend, Khalil Bryant, fled from the scene. Based on statements obtained from victim Hill and several eyewitnesses, police determined that either defendant or Bryant had fired the shots. Both were subsequently charged with the murder of Williams, the attempted murder of Hill, and other charges.

Roughly five months later, in November 2004, Winslow Township police went to Bryant's residence to investigate a different incident and discovered the weapon that had been used in the Camden shooting. Bryant was arrested for the Winslow Township shooting and subsequently pled guilty. In November 2005, the lead investigator of the Camden shooting spoke with Bryant about the weapon. Bryant initially stated that he purchased the gun on the street, but later admitted that he possessed the weapon on the night of the Camden shooting. He stated that defendant gave him the weapon after the Camden shooting with instructions to hide it.

As part of his defense, defendant contended that Bryant, not he, shot the two victims. To that end, he sought to introduce evidence of Bryant's involvement in the Winslow Township shooting in order to prove that Bryant had the intent to use the murder weapon. Defendant also moved for a separate trial. The trial court, applying the four-prong Cofield test, ruled that the other-crimes evidence was inadmissible because it was not relevant to any issue and was unduly prejudicial to Bryant. The court also denied defendant's motion for a separate trial.

At trial, the sole contested issue was the identity of the shooter. Among other evidence, the State admitted a redacted portion of Bryant's 2005 statement in which he stated that he had received the gun from "someone" immediately after the Camden shooting. Other trial evidence permitted the jury to readily find that defendant was the "someone" who gave the gun to Bryant. The jury found defendant guilty of all counts and found Bryant guilty of third-degree unlawful possession of a weapon and two counts of third-degree endangering an injured victim.

On appeal defendant argued that his right to confrontation was violated because the trial court admitted Bryant's statements identifying defendant as the shooter, even though Bryant did not testify. Defendant also contended that the trial court should have permitted him to introduce the other-crimes evidence, namely that Bryant used the murder weapon in connection with the Winslow Township incident. Defendant explained that the exclusion of the evidence deprived him of critical evidence supporting his defense that Bryant was the shooter, and mandated severance of the charges and separate trials for defendant and Bryant. The Appellate Division affirmed defendant's conviction and the Court granted his petition for certification. State v. Weaver, 210 N.J. 108 (2012).

**HELD**: The confluence of defendant's third-party defense strategy, the erroneous denial of his defensive use of co-defendant's subsequent acts with the murder weapon, the denial of his motion to sever the trial, the admission of an inadequately redacted statement, and the erroneous admission of when co-defendant received the murder weapon require a new trial. The cumulative impact of these errors was not harmless.

1. From defendant's many challenges, the Court discerns four central issues: (1) the denial of his application to use reverse 404(b) evidence against Bryant, (2) the denial of his motion for severance, (3) the admission of an incriminatory statement from Bryant's 2005 statement following his arrest for the Winslow Township shooting, and (4) the cumulative effect of some or all of those errors. (pp. 16)

2. Two or more defendants may be charged and tried jointly "if they are alleged to have participated in the same act or transaction" constituting the offense. R. 3:7-1; R. 3:15-1. If it appears that a defendant or the State is prejudiced by a joint trial, the trial court may sever. R. 3:15-2(b). When, as here, a defendant's defense strategy is antagonistic at its core to the defense strategy of his co-defendant so that the jury could believe only one of them, severance is required. Here, the trial court rejected the motion to sever because it also excluded defendant's other-crimes evidence. Critically, however, the trial court's other crimes analysis was in error. (pp. 17-18, 28-29)

3. In analyzing defendant's other-crimes evidence – specifically, the evidence of Bryant's participation in the Winslow Township shooting – the trial court applied the four-prong test established State v. Cofield, 127 N.J. 338 (1992). However, when a person charged with a criminal offense seeks to use other-crimes evidence defensively, the Cofield standard does not apply. Instead, reverse 404(b) evidence is governed by a simple relevance standard, and a defendant may use the other-crimes evidence if it tends to negate the defendant's guilt of the crime charged. Under this more relaxed standard, courts must still determine that the probative value of the evidence is not substantially outweighed by any of the Rule 403 factors. Here, Bryant's involvement in the Winslow Township shooting was relevant to the Camden shooting, and presentation of the other-crimes evidence would not have consumed undue time or confused or misled the jury. Thus, the trial court should have permitted defendant to use Bryant's involvement in the Winslow Township shooting defensively at trial. Such evidence was a key component of defendant's third-party guilt defense. In addition, if the evidence of Bryant's involvement in the November 2004 Winslow Township shooting was admissible, the trial should have been severed. (pp. 19-20, 29-31).

4. The trial court also erred by permitting the State to enter into evidence a redacted version of Bryant's statement that he received the gun immediately after the Camden shooting. Although courts generally permit the use of co-defendant statements that do not directly incriminate another defendant as long as all references to the defendant are removed, here, the admission of Bryant's statement violated defendant's right to confront a critical witness. A co-defendant's incriminatory statement is admissible only where it requires the jury to make an inferential step to link the statement to the defendant. Simply replacing a defendant's name with a blank space or the word "deleted" is not permissible because it "points to the defendant." Here, the State and defense counsel agreed that Bryant's 2005 statement would be redacted and the word "someone" would be used in place of defendant's name. At trial, however, Bryant's counsel sought to establish that Bryant received the weapon immediately after the Camden shooting. Both the prosecutor and defendant's counsel objected, stating that the additional detail eviscerated any benefit achieved by substituting "someone" for defendant's name. Their objections were correct. Considered in the context of the complete trial record, the jury was not required to make an inferential step to link defendant to the person referred to in Bryant's statement. Although the redaction of defendant's name may have passed muster if counsel had not asked when Bryant received the weapon, as soon as the jury learned that Bryant received it on the night of the Camden shooting, the jury had been provided a direct path to defendant. (pp. 21-26, 31-34)

5. In some circumstances, it is difficult to identify a single error that deprives a defendant of a fair trial. This is one of those cases. Here, we have a collection of errors, one of which involves a violation of defendant's right to confront a witness, namely his co-defendant, to contest the accusation that defendant was the shooter. This is a classic case of several errors, none of which may have independently required a reversal, but which in combination dictate a new trial. Defendant's defense strategy of third-party guilt was not farfetched and use of the Winslow Township shooting evidence would have added some strength to that strategy. It could not, however, be presented at a joint trial. The cumulative impact of these errors was not harmless, and, therefore, a new trial is required. (pp. 26-27, 34-37)

The judgment of the Appellate Division is **REVERSED**, and the matter is **REMANDED** to the trial court for proceedings consistent with this opinion.

**CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, ALBIN, PATTERSON, and FERNANDEZ-VINA; and JUDGE RODRÍGUEZ (temporarily assigned) join in JUDGE CUFF's opinion.**

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

       v.

JAHNELL WEAVER,

    Defendant-Appellant.


        Argued February 4, 2014 – Decided September 8, 2014

        On certification to the Superior Court, Appellate Division.

        Kevin G. Byrnes, Designated Counsel, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney).

        Jason Magid, Assistant Prosecutor, argued the cause for respondent (Warren W. Faulk, Camden County Prosecutor, attorney; Nancy P. Scharff, Assistant Prosecutor, on the letter briefs).

        Alexander R. Shalom argued the cause for amicus curiae American Civil Liberties Union of New Jersey (Edward L. Barocas, Legal Director and Ronald K. Chen, Acting Dean of Rutgers Constitutional Litigation Clinic Center for Law & Justice, attorneys; Mr. Shalom, Mr. Barocas, and Jeanne M. Locicero, of counsel and on the brief).

        Brian J. Uzdavinis, Deputy Attorney General, argued the cause for amicus curiae Attorney General of New Jersey John J. Hoffman, Acting Attorney General, attorney).

JUDGE CUFF (temporarily assigned) delivered the opinion of the Court.

On a warm summer evening in late June 2004, approximately fifty young men and women gathered at the Camden apartment of a recent high school graduate to celebrate her graduation. Later in the evening, a verbal argument erupted on the street in front of the apartment between two young men -- Jahnell Weaver and Edward Williams. Each had a friend standing by their side. As the verbal altercation continued, someone drew a gun and fired five shots. Williams died from three gunshot wounds. His friend, Amyr Hill, was gravely wounded by two gunshots but survived. Weaver and his friend fled from the scene.

The police investigation quickly focused on Weaver and Khalil Bryant. Based on statements obtained from Hill and several eyewitnesses, police determined that the shots were fired by either Weaver or Bryant. Both were subsequently charged with the murder of Williams, the attempted murder of Hill, and various weapons charges.

The focus of the trial was the identity of the shooter. Hill initially identified Bryant as the shooter but later modified his identification, stating that he was not sure whether Weaver or Bryant fired the shots. An eyewitness provided similar testimony. Another eyewitness provided a description of the shooting that suggested Bryant was the

2

shooter.   Two other eyewitnesses stated unequivocally that Weaver shot both young men.

Weaver contended that Bryant, not he, shot the young men. In support of this defense, Weaver sought to introduce evidence of Bryant's involvement in a later shooting in which he used the murder weapon.  Weaver also moved for a separate trial. Applying the Cofield[1] analysis rather than a simple relevancy analysis, the trial court denied Weaver's defensive use of the subsequent other-crimes evidence and denied the severance motion.

Related to the subsequent shooting event, the State admitted a redacted portion of Bryant's statement in which he stated that he received the gun from someone immediately after the Camden shooting occurred.  Other trial evidence permitted the jury to readily find that the "someone" who gave the gun to Bryant on the night of the Camden shooting was none other than Weaver.

No one error is determinative of this appeal.  The confluence of Weaver's third-party defense strategy, the erroneous denial of Weaver's defensive use of Bryant's subsequent acts with the murder weapon, the denial of his motion to sever the trial, the admission of an inadequately redacted statement by Bryant, and the erroneous admission, over the

---

[1] State v. Cofield, 127 N.J. 328, 338 (1992).

3

objection of the prosecutor and Weaver's attorney, of when Bryant received the murder weapon require a new trial.

I.

A.

This appeal arises from a verbal dispute between two young men during a high school graduation party in Camden in June 2004 that escalated to shots fired, leaving one young man dead and another seriously wounded. Either defendant or Bryant shot the victims. Certain facts are undisputed.

On June 26, 2004, about fifty people between the ages of sixteen and nineteen assembled at a high school graduation party for a seventeen-year-old girl. Late in the evening, four young men gathered outside her apartment. Edward Williams and defendant Jahnell Weaver became embroiled in a verbal dispute. Hill stood by Williams' side. Bryant stood by the side of defendant. The two groups faced each other only several feet apart. Some witnesses described Williams as screaming at defendant, who spoke quietly and laughed at Williams. Williams asked Hill for his phone and called a friend. Hill did not hear the entire conversation but thought Williams was requesting aid from the person with whom he spoke.

At that moment five shots were fired. Williams was struck by three bullets, Hill by two. Both men tried to flee but Williams fell in the street; Hill fell closer to the curb.

4

As onlookers rushed to the aid of Williams and Hill, many observed defendant and Bryant run from the scene. Lamike Goffney, the godmother of one eyewitness and the guardian of another, observed one of the fleeing men transfer a gun to the other man. Almost a year later, Bryant admitted that sometime on the night of the shooting he gained possession of the murder weapon after the shooting.

Someone placed Hill in a car that drove away from the scene at a high rate of speed. The car was intercepted by an emergency medical services (EMS) vehicle. Hill was removed from the car, placed in the EMS vehicle, and taken to the hospital.[2] Police and another EMS vehicle soon arrived at the scene of the shooting. Williams was removed and taken to the hospital where he was declared dead.[3]

---

[2] The trauma surgeon who treated Hill testified that Hill arrived at the hospital "in extremis" from multiple gunshot wounds to the torso and leg. The gunshot wound to the torso partially split the liver causing severe blood loss. The wound to the leg severed the femoral artery and also produced heavy blood loss. The trauma surgeon repaired the liver and managed respiratory failure which developed later. A vascular surgeon performed "an inter-position [vein] graft" to address the severed femoral artery. Hill remained hospitalized for several weeks.

[3] The medical examiner described the three gunshot wounds suffered by Williams. The first was "a perforating wound that entered the upper neck on the left, passed left to right, and exited" the body. It only caused muscle damage. The second and third gunshots entered the left side of the chest. One passed through the ribcage and the aorta. The other struck the left lung. Both wounds caused severe blood loss -- "[the] kind of blood loss . . . associated with rapid death."

5

The central issue, and the only disputed issue at trial, was who shot Williams and Hill. Even that issue was narrowly focused because all the evidence pointed to either defendant or Bryant.

In his first interview following discharge from the hospital, Hill told a defense investigator that Bryant shot him. At trial, he testified that he was not sure whether defendant or the person who was standing next to defendant fired the gun.

Bryant DeShields observed part of the verbal altercation between defendant and Williams. DeShields was a close friend of Williams and Hill and knew defendant from school and the neighborhood. In his first statement, given within three or four hours of the shooting, DeShields told the investigator that defendant did not shoot Williams or Hill. Four days later, however, he informed the same investigator that he was not sure who shot his friends. At trial, he testified that he "saw a hand," and stated he did not "know whose hand it was," but he had no doubt that the shots were fired by either defendant or Bryant.

Cherae Frazier testified that she saw defendant lift his shirt and pull a gun from his pants and shoot Williams and Hill. Jasmaine Watkins testified that she saw defendant fire a gun five or six times. Goffney, Frazier's godmother and Watkins' guardian, responded to the scene after hearing the gunshots and

6

encountered Frazier.  In response to Goffney's question about the whereabouts of Watkins, Frazier stated, "[defendant] didn't have to kill him.  [Defendant] didn't have to kill him."

Goffney also saw two young men, one dressed in a white shirt and blue shorts, running from the site of the shooting.  The young man in the blue shorts "passed the other guy something."  She explained that "[o]ne had something in his hand.  He passed the other one whatever he had in his hand and they kept on running."

DeShields testified that Bryant wore a navy blue hat pulled low over his eyes and had a white cast or a cast-like object on one arm.  Frazier and Dominique Pratt, another eyewitness, confirmed that Bryant wore a white cast on his right arm.

Pratt also saw Bryant dancing at the party.  As Bryant danced, Pratt saw a gun fall from his waistband two or three times.  In addition, Pratt observed the verbal dispute between defendant and Williams.  Pratt observed defendant and Bryant have "a little exchange" of something, but could not identify what passed between the two young men.  Soon thereafter, Pratt "saw a cast go up and [] an arm under it and [] heard gunshots."  Pratt could not state whether defendant or Bryant fired the gun.

B.

Following waiver to adult court, a grand jury indicted seventeen-year-old Jahnell Weaver and Khalil J. Bryant and

7

charged them with the following offenses: first-degree murder, contrary to N.J.S.A. 2C:11-3(a)(1)(2) (count one); first-degree attempted murder, contrary to N.J.S.A. 2C:5-1 and 2C:11-3 (count two); second-degree aggravated assault, contrary to N.J.S.A. 2C:12-1(b)(1) (count three); third-degree aggravated assault with a deadly weapon, contrary to N.J.S.A. 2C:12-1(b)(2) (count four); second-degree possession of a weapon for an unlawful purpose, contrary to N.J.S.A. 2C:39-4(a) (count five); third-degree unlawful possession of a weapon, contrary to N.J.S.A. 2C:39-5(b) (count six); and two counts of third-degree endangering an injured victim, contrary to N.J.S.A. 2C:12-1.2 (counts seven and eight).

Defendant filed a motion for severance pursuant to Rule 3:15-2(b). Defendant contended that Bryant, not he, was the shooter. In support of this defense, defendant sought to introduce other-crimes evidence that showed that Bryant threatened to use, and did use, the same firearm used to shoot Williams and Hill at a later date. Defendant argued that the other-crimes evidence showed Bryant had the intent to use the murder weapon. The trial court, applying the four-prong Cofield test, ruled that the other-crimes evidence was inadmissible because it was not relevant to any issue and was unduly prejudicial to Bryant. The court also denied defendant's motion for a trial separate from Bryant.

Defendant and Bryant were tried together. The jury found defendant guilty of all counts. The jury acquitted Bryant of counts one, two, three, four, and five, but found him guilty of counts six, seven and eight. Defendant is serving an aggregate term of sixty-six years' imprisonment, 51.85 years of which must be served without parole.

On appeal, defendant argued that his right to confrontation was violated when the trial court admitted hearsay statements uttered by Bryant identifying him as the shooter. Bryant did not testify; therefore, defendant did not have the opportunity to cross-examine him.

Defendant also contended that the trial court should have permitted him to introduce other-crimes evidence that Bryant used the murder weapon during a confrontation with others several months after the Camden shooting in June 2004. He argued that this evidence showed Bryant's intent to use the gun when involved in a dispute. Defendant maintained that the other-crimes evidence was relevant and the prejudice to Bryant could have been resolved by granting defendant's motion to sever. Moreover, he urged that the exclusion of the evidence deprived him of critical evidence supporting his defense that Bryant, not he, was the shooter, and mandated severance of the charges and separate trials for defendant and Bryant.

Defendant also contended that the trial court should have delivered a passion/provocation manslaughter charge as a lesser-included offense of murder, that the trial court failed to mold the charge to the facts as developed at trial, that his right to a speedy trial had been denied, and that the sentence was excessive.

In an unpublished opinion, the Appellate Division affirmed defendant's conviction. The appellate panel held that the trial court did not abuse or mistakenly exercise its discretion when it denied defendant's motion for severance. The panel reasoned that "[s]everance would have been required if and only if that evidence was otherwise admissible . . . the only purpose for which that evidence would be admitted is to establish Bryant's propensity to shoot others. It was therefore inadmissible, in either a joint or individual trial." The appellate panel observed that both defendants participated in the episode with the victims and much of the evidence was the same. In the end, the panel opined that "defendant lost nothing by being tried with Bryant."

The Appellate Division also determined that Bryant's redacted statement regarding his possession of the murder weapon after the night of the Camden shooting did not violate defendant's Sixth Amendment right to confrontation. The panel emphasized that the trial court admitted the redacted statement

10

at defendant's request and the statement potentially exculpated defendant and inculpated Bryant. The panel also determined that the use of the statement by Bryant's counsel to suggest that defendant gave the weapon to Bryant was error, but harmless, because defendant and Bryant were charged with all crimes as principals and accessories, and defendant gained some benefit from the testimony because it deflected attention from him.

In addition, the appellate panel determined that the trial court correctly barred evidence that Bryant had been involved in a later shooting. The panel concluded that the later violent act by Bryant was relevant only to establish Bryant's propensity to commit violent acts, which is expressly precluded by N.J.R.E. 404(b). The appellate court rejected, as without merit, defendant's contentions that the trial court should have instructed the jury on passion/provocation manslaughter because one of the victims uttered a racial slur, that the trial court prejudicially erred by failing to mold the prior inconsistent statement portion of the final charge to the trial evidence, and that the prosecutor engaged in prosecutorial misconduct. The panel also concluded that defendant was not entitled to a new trial due to cumulative error.

Finally, the appellate court determined that the four-year delay between indictment and trial did not violate defendant's right to a speedy trial because he failed to establish that he

11

suffered any prejudice attributable to the delay, that the prosecutor did not engage in misconduct in the investigation of the incident and preparation for trial, and that the sentence is not excessive.

We granted defendant's petition for certification. State v. Weaver, 210 N.J. 108 (2012).

II.

A.

Before this Court, defendant reiterates the same arguments that he presented to the Appellate Division but focuses particularly on five issues -- the exclusion of the other-crimes evidence, the failure to sever the trial, the admission of Bryant's hearsay statement that defendant passed the gun to him after the shooting, the omission of the passion/provocation manslaughter charge, and cumulative error. Defendant emphasizes that the surviving victim and an eyewitness identified Bryant as the shooter soon after the shooting, that one witness observed Bryant with the murder weapon before the shooting, and that Bryant possessed the gun after the shooting and used it against others on another occasion. Defendant asserts this evidence supports the conclusion that the gun belonged to Bryant, not defendant, and that Bryant was the shooter.

Furthermore, defendant contends that Bryant's out-of-court statement that defendant passed the gun to him following the

12

shooting should not be considered a declaration against Bryant's penal interest. He contends such an interpretation "belies common sense." Defendant acknowledges that Bryant admitted to a possession of a weapon offense but emphasizes that he also exculpated himself from the murder charge and the lengthy term of imprisonment imposed for the offense. In other words, the statement was not actually against Bryant's penal interest when he made the statement.

Finally, defendant urges that the circumstances that unfolded that evening in Camden created an atmosphere that required submission of the charge of passion/provocation manslaughter as a lesser-included offense of murder. Defendant insists that the victim's call for backup from his group of friends and the victim's use of a derogatory term provided the factual underpinnings for the lesser-included offense and the appropriate charge.

B.

The State argues that the trial court properly denied defendant's attempt to admit evidence that Bryant used the murder weapon against others months after the Camden shooting. It contends that the trial court properly applied the Cofield analysis to exclude the later incident and properly concluded that the later incident was not relevant to the charges arising from the Camden shooting. The State argues that, whether the

13

evidence of the later use of the murder weapon by Bryant is considered direct other-crimes evidence or reverse other-crimes evidence, the reason for offering the evidence was for no purpose other than to establish Bryant's propensity to commit violent acts.

The State also maintains that the trial court properly denied defendant's motion for severance. It emphasizes that defendant conditioned the severance motion on his ability to introduce the reverse other-crimes evidence. Once the trial judge denied the use of that evidence, the need for a severance evaporated. Moreover, the State emphasizes that defendant's severance argument is premised on the relevance and admissibility of the reverse other-crimes evidence.

The State also argues that the admission of evidence of a redacted portion of Bryant's statement that defendant passed the weapon to him after defendant shot Williams and Hill did not violate defendant's right to confrontation. The State emphasizes that the contested testimony was elicited by Bryant's counsel, not the prosecutor, and defendant did not object or seek a limiting instruction. Moreover, any error must be considered harmless due to the overwhelming evidence of guilt adduced by the State.

Finally, the State contends that the four-year delay between indictment and trial did not violate defendant's right

to a speedy trial, the prosecutor's investigator did not engage in misconduct, the trial court properly denied a passion/provocation manslaughter charge, and the trial court imposed a fair and appropriate sentence. Addressing the speedy trial contention, the State maintains that defendant suffered no prejudice, and the delay was occasioned by some pretrial proceedings initiated by defendant.

C.

The Attorney General, appearing as amicus curiae, concedes that reverse 404(b) or defensive use of other-crimes evidence is viewed more indulgently than use of such evidence by the State. It urges, however, that defendant sought to use the evidence for no other reason than to establish Bryant's propensity to commit violent acts. The Attorney General emphasizes that defendant moved to introduce Bryant's out-of-court statement in which Bryant admitted that he possessed the gun "before and after the shooting." It contends that the brief and unanticipated testimony that defendant passed the gun to Bryant after the shooting does not require a new trial. The Attorney General insists that the reference to the redacted inculpatory portion of Bryant's statement by Bryant's counsel, not the prosecutor, does not warrant a new trial.

Amicus American Civil Liberties Union of New Jersey (ACLU) urges the Court to address the speedy trial issue raised by

15

defendant.  It urges the Court to take this opportunity to define with certainty the length of delay that constitutes presumptive denial of a defendant's right to a speedy trial.  It recommends that when a defendant has been incarcerated for more than 270 days and meets the other prongs of the Barker v. Wingo[4] test, the burden must shift to the State to establish that the defendant has not been prejudiced by the delay.

### III.

Defendant has raised several issues.  Based on our review of the record, we discern that four issues -- the denial of defendant's application to use reverse 404(b) evidence against Bryant, the denial of defendant's motion for severance, the admission of an incriminatory statement from Bryant's statement following his arrest for a later shooting, and the cumulative effect of some or all of any of those errors -- are the central issues in this appeal.[5]  As related in our summary of the evidence adduced at trial, neither defendant nor Bryant denied that they attended the graduation party or that they were in the street outside the residence where the party occurred or that a

---

[4] Barker v. Wingo, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972).

[5] Defendant's contention that the record required a passion/provocation manslaughter charge is without merit.  It is well-settled that words alone, even a racial slur, are not sufficient to warrant this charge.  State v. Mauricio, 117 N.J. 402, 413-14 (1990).

16

verbal dispute occurred between defendant and Bryant and two other young men.  The issue was solely the identity of the person who fired the gun.  It is in this context that we review these closely related issues.

A.

Two or more defendants may be charged and tried jointly "if they are alleged to have participated in the same act or transaction" constituting the offense.  R. 3:7-1 (indictment); R. 3:15-1 (trial).  Indeed, under those circumstances, a joint trial is "preferable" because it serves judicial economy, avoids inconsistent verdicts, and allows for a "more accurate assessment of relative culpability."  State v. Brown, 118 N.J. 595, 605 (1990).

If, for any reason, it appears that a defendant or the State is prejudiced by the joint trial, the trial court may sever.  R. 3:15-2(b) (governing relief from prejudicial joinder).  One instance in which a defendant is prejudiced by a joint trial is when a defendant's and a co-defendant's defenses are not simply at odds, but are "antagonistic at their core," meaning that they are mutually exclusive and the jury could believe only one of them.  Brown, supra, 118 N.J. at 605-07. The decision to sever is within the trial court's discretion, and it will be reversed only if it constitutes an abuse of

17

discretion.  State v. Sanchez, 143 N.J. 273, 283 (1996) (citing Brown, supra, 118 N.J. at 603).

B.

A trial court ruling on the admissibility of other-crimes evidence is a discretionary matter that receives "great deference" and is reversible only if clearly erroneous.  State v. Gillispie, 208 N.J. 59, 84 (2011).  But evidentiary rulings that undermine confidence in the validity of the conviction or misapply the law are subject to reversal.  State v. Fulston, 325 N.J. Super. 184, 192-93 (App. Div. 1999) (reversing conviction of murder of infant because trial court wrongfully excluded defendant's proffered evidence that child's mother previously abused child), certif. denied, 163 N.J. 397 (2000).

The fundamental principle guiding the admission of evidence is relevance.  Relevant evidence is "evidence having a tendency in reason to prove or disprove any fact of consequence to the determination of the action."  N.J.R.E. 401.  Even if evidence is relevant, evidence of other crimes or bad acts is inadmissible if offered "to prove the disposition of a person in order to show that such person acted in conformity therewith" on another occasion.  N.J.R.E. 404(b).  In other words, even though often relevant, parties cannot introduce evidence that suggests a person is predisposed to commit wrongful acts to argue that the party committed the wrongful act at issue.  State v. Nance,

18

148 N.J. 376, 386 (1997); see also Gillispie, supra, 208 N.J. at 85 (asserting that other-crimes evidence may be both inherently prejudicial and also "highly relevant to prove a defendant's guilt"); State v. G.S., 145 N.J. 460, 468 (1996) (acknowledging that other-crimes evidence is at "tension" because it is "both probative and prejudicial").

But other-crimes evidence is admissible to prove something other than an individual's propensity to commit wrongful acts, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident" so long as "such matters are relevant to a material issue in dispute." N.J.R.E. 404(b). The Court has developed a rule of general application to guide the admission of other-crimes evidence. Cofield, supra, 127 N.J. at 338. Under this test, other-crimes evidence is admissible only if: (1) relevant to a material issue; (2) similar in kind and reasonably close in time to the offense charged; (3) supported by clear and convincing evidence; and (4) its prejudice does not outweigh its probative value. Ibid.

When a person charged with a criminal offense seeks to use other-crimes evidence defensively, the Cofield standard does not govern because "an accused is entitled to advance in his defense any evidence which may rationally tend to refute his guilt or buttress his innocence of the charge made." State v. Garfole,

76 N.J. 445, 453 (1978). A defendant generally may introduce "similar other-crimes evidence defensively if in reason it tends, alone or with other evidence, to negate his guilt." Ibid. Thus, even though "a fairly rigid standard of similarity may be required" of the prosecution, when it is the defendant who "offer[s] that kind of proof exculpatorily, prejudice to the defendant is no longer a factor, and simple relevance to guilt or innocence should suffice" as the admissibility standard. Id. at 452-53; see also State v. Cook, 179 N.J. 533, 566-67 (2004) (affirming Garfole rule that standard for defendants using other-crimes evidence defensively is "simple relevance"). The defensive use of similar other-crimes evidence is sometimes referred to as "reverse 404(b)" evidence.

Under this more relaxed standard, trial courts must still determine that the probative value of the evidence is not substantially outweighed by any of the Rule 403 factors, which are "undue prejudice, confusion of issues, or misleading the jury," and "undue delay, waste of time, or needless presentation of cumulative evidence." See Cook, supra, 179 N.J. at 567. This determination is highly discretionary. Ibid. In Cook, for example, the Court deferred to the trial court's determination that though the other-crimes evidence was relevant, its probative value was "minimal" because there was "nothing

distinctive to tie" the sexual assault with a non-sexual abduction. Id. at 568-69.

C.

A person charged with a criminal offense has the right to confront his accusers. U.S. Const. amend. VI. This right is founded on the belief that subjecting testimony to cross-examination enhances the truth-discerning process and the reliability of the information. California v. Green, 399 U.S. 149, 159, 90 S. Ct. 1930, 1935, 26 L. Ed. 2d 489, 497 (1970); State ex rel. J.A., 195 N.J. 324, 342 (2008). The Confrontation Clause generally forbids admitting testimony of a witness who directly or indirectly provides information derived from a non-testifying witness that incriminates a defendant at trial. State v. Branch, 182 N.J. 338, 350 (2005).

The Confrontation Clause does not condemn all hearsay. Crawford v. Washington, 541 U.S. 36, 51, 124 S. Ct. 1354, 1364, 158 L. Ed. 2d 177, 192 (2004); Branch, supra, 182 N.J. at 349. Hearsay that satisfies a recognized exception to the hearsay rule and is non-testimonial in nature will not run afoul of the Confrontation Clause. Branch, supra, 182 N.J. at 349. Hearsay that is testimonial in nature is inadmissible, even if it satisfies a recognized exception to the hearsay rule, when the declarant does not testify. See Davis v. Washington, 547 U.S. 813, 822, 126 S. Ct. 2266, 2273-74, 165 L. Ed. 2d 224, 237

21

(2006); State v. Michaels, ___ N.J. ___, ___ (2014) (slip op. at 30).

The Confrontation Clause is commonly implicated when a witness refers to specific information from a non-testifying third party. In Branch, supra, the State's case against the defendant rested primarily on the identification of the defendant by two victims. 182 N.J. at 346-47. A detective testified that he assembled a photo array based on information received. Id. at 347. The Court determined that the reference to "information received" contravened the defendant's Sixth Amendment right to confront witnesses with incriminating evidence because the reasons the detective included a photo in an array are irrelevant to the identification process and the officer conveyed that he possessed information unknown to them but highly relevant to the investigation. Id. at 352-53; accord State v. Bankston, 63 N.J. 263, 268-69 (1973) (holding that detective's recounting of information received from informant to explain reason for entry to tavern and arrest of defendant contravened defendant's Sixth Amendment right to confront witnesses against him). The "common thread" that renders testimony about information received from non-testifying third parties inadmissible "is that a police officer may not imply to the jury that he possesses superior knowledge, outside the record, that incriminates the defendant." Branch, supra, 182

22

N.J. at 351.  The Confrontation Clause is violated only when the hearsay statement is testimonial or meant to establish events relevant to the current prosecution.  Davis, supra, 547 U.S. at 822, 126 S. Ct. at 2273-74, 165 L. Ed. 2d at 237.

The Confrontation Clause is implicated in other contexts than the Branch/Bankston model.  In prosecutions where there are multiple participants in a crime, the Confrontation Clause's "truth finding function" is "uniquely threatened when an accomplice's confession is sought to be introduced against a criminal defendant without the benefit of cross-examination." State v. Laboy, 270 N.J. Super. 296, 303 (App. Div. 1994) (citing Lee v. Illinois, 476 U.S. 530, 541, 106 S. Ct. 2056, 2062, 90 L. Ed. 2d 514, 526 (1986)).  In Bruton v. United States, the United States Supreme Court held that a defendant's confrontation right was violated by the admission of his co-defendant's incriminatory confession, even if curative jury instructions were later given.  391 U.S. 123, 126, 88 S. Ct. 1620, 1622, 20 L. Ed. 2d 476, 479 (1968).  The Court recognized that such incriminating statements can be "devastating" to a defendant whose credibility is "inevitably suspect."  Id. at 136, 88 S. Ct. at 1628, 20 L. Ed. 2d at 485; see also State v. Young, 46 N.J. 152, 156 (1965) (holding pre-Bruton that co-defendant's out-of-court confession is inadmissible against other defendant).

23

_Bruton_'s application is limited, however.  The Court has held that _Bruton_, which involved a co-defendant's expressly incriminatory confession, does not apply to a statement that is linked to the defendant only through other evidence and is "not incriminating on its face."  _Richardson v. Marsh_, 481 _U.S._ 200, 208, 107 _S. Ct._ 1702, 1707, 95 _L. Ed._ 2d 176, 186 (1987).  In _Richardson_, redacting all references to the defendant in a non-facially incriminatory statement and giving the jury a limiting instruction was adequate to protect the defendant's confrontation rights.  _Ibid._  However, the ruling was confined to redacted statements that remove all references to the defendant.  _Id._ at 211 n.5, 107 _S. Ct._ at 1709 n.5, 95 _L. Ed._ 2d at 188 n.5.  Moreover, the Court expressly offered "no opinion on the admissibility of a confession in which the defendant's name has been replaced with a symbol or neutral pronoun."  _Ibid._

In _Gray v. Maryland_, the Court addressed the reserved question holding that admission of a co-defendant's confession violated the defendant's confrontation right even when the defendant's name had been replaced with blank spaces or the word "deleted."  523 _U.S._ 185, 194, 118 _S. Ct._ 1151, 1156, 140 _L. Ed._ 2d 294, 302 (1998).  The Court reasoned that a blank space in a redacted document "points to the defendant."  _Ibid._  The Court clarified _Richardson_, declaring that incriminatory statements were admissible as long as there was an inferential step between

24

the statement and the defendant.  Id. at 196, 118 S. Ct. at 1157, 140 L. Ed. 2d at 303.  At the same time, the Court emphasized that a statement directly referring to another is prohibited by Bruton because it can be assumed that the referenced person is the defendant.  Ibid.

Thus, in a case in which neutral terms, such as "the other guy," were used but the detective testified that the co-defendant identified defendant as the shooter and the prosecutor's summation effectively eliminated the redaction, the appellate court reversed the conviction.  Vazquez v. Wilson, 550 F.3d 270, 282 (3d Cir. 2008).  The panel noted that the detective's testimony and the prosecutor's argument negated the otherwise acceptable use of a non-identifying descriptor of a participant in a criminal act.  Ibid.  Moreover, one of the three participants was not on trial and the declarant had not implicated himself.  Id. at 281.  The nature of the linkage between the redacted statement and other evidence directly identified the defendant as the shooter, rendering the redaction utterly ineffective.  Id. at 280; see also United States v. Richards, 241 F.3d 335, 341 (3d Cir. 2001) (declaring use of "my friend" in redacted statement in case with three participants "sharply incriminated" defendant, violating Bruton as interpreted in Gray).  By contrast, descriptive terms such as "friend," "other guy," or "another guy" that are "bereft of any

25

innuendo that ties them unavoidably to [the defendant]" do not run afoul of the Sixth Amendment, particularly when there were fifteen participants in the criminal episode. Priester v. Vaughn, 382 F.3d 394, 400 (3d Cir. 2004), cert. denied, 543 U.S. 1093, 125 S. Ct. 974, 160 L. Ed. 2d 906 (2005).

When evidence is admitted that contravenes not only the hearsay rule but also a constitutional right, an appellate court must determine whether the error impacted the verdict. Chapman v. California, 386 U.S. 18, 24, 87 S. Ct. 824, 828, 17 L. Ed. 2d 705, 710-11 (1965). The standard has been phrased as requiring a reviewing court "to declare a belief that [the error] was harmless beyond a reasonable doubt." Ibid.; see Branch, supra, 182 N.J. at 353 (requiring appellate court to determine whether erroneously admitted evidence is clearly capable of producing unjust result in the case of plain error); Bankston, supra, 63 N.J. at 272-73 (applying harmless error standard when timely objection is lodged at trial and there may have been curative instruction).

D.

When legal errors cumulatively render a trial unfair, the Constitution requires a new trial. State v. Orecchio, 16 N.J. 125, 129 (1954). "'[W]here any one of several errors assigned would not in itself be sufficient to warrant a reversal, yet if all of them taken together justify the conclusion that defendant

26

was not accorded a fair trial, it becomes the duty of this court to reverse.'" Id. at 134 (quoting State v. Dolliver, 184 N.W. 848, 849 (Minn. 1921)). If a defendant alleges multiple trial errors, the theory of cumulative error will still not apply where no error was prejudicial and the trial was fair. See State v. D'Ippolito, 22 N.J. 318, 325-26 (1956) (rejecting application of Orecchio because none of alleged errors prejudiced defendant nor impaired fair trial). In assessing whether a defendant received a fair trial, courts are guided by the following principle: "'[D]evised and administered by imperfect humans, no trial can ever be entirely free of even the smallest defect. Our goal, nonetheless, must always be fairness. A defendant is entitled to a fair trial but not a perfect one.'" State v. Wakefield, 190 N.J. 397, 537 (2007) (quoting State v. R.B., 183 N.J. 308, 333-34 (2005)).

IV.

Three of the legal issues which are the focus of this appeal -- severance of the trial of defendant and Bryant, defensive use of other-crimes evidence, and the Confrontation Clause implications of a statement provided by Bryant to the lead investigator -- are founded on Bryant's November 2004 arrest for a shooting in Winslow Township and his 2005 statement about when and how he gained possession of the weapon. The

27

application of the law governing these discrete issues requires a review of those subsequent events.

In November 2004, five months after the Camden shooting, Winslow Township police went to Bryant's residence to investigate a shooting. Bryant was a suspect in that shooting. Police found a weapon and a magazine behind the residence and obtained a statement from Bryant. He admitted that he had hidden the gun in the place police found it. A firearms examiner testified that the gun found behind Bryant's Winslow Township home was the same gun that killed Williams and injured Hill. Bryant was arrested for the Winslow Township shooting and subsequently pled guilty. It is this charge that defendant sought to introduce as other-crimes evidence at trial.

In November 2005, the lead investigator of the Camden shooting spoke with Bryant about the weapon. Initially, Bryant stated that he purchased the gun on the street in Camden. When confronted with the fact of his presence at the June 2004 shooting, Bryant admitted that he possessed the weapon on the night of the Camden shooting. He stated that defendant gave him the weapon after the shooting with instructions to hide it.

Prior to trial, in consultation with defense counsel for defendant and Bryant, Bryant's November 2005 statement was redacted. In place of defendant's name, the word "someone" was inserted. The investigator testified that Bryant admitted he

had the gun on the night of the Camden shooting but someone gave it to him after the shooting and he hid it.

The November 2004 Winslow Township shooting was one element, albeit a critical element, of defendant's defense strategy of third-party guilt. Defendant sought to prove that Bryant was the shooter, and his subsequent use of the same weapon that killed Williams and injured Hill supported defendant's position that Bryant was the shooter.

A joint trial is preferable because it fosters the goal of judicial economy and prevents inconsistent verdicts. Brown, supra, 118 N.J. at 605. When, as here, defendant's defense strategy is antagonistic at its core to the defense strategy of his co-defendant so that the jury could believe only one of them, severance is in order.

Here, the trial court rejected the motion to sever because he also excluded the other-crimes evidence proffered by defendant. In doing so, the trial court applied the Cofield four-prong analysis and found the evidence of the November 2004 Winslow shooting and Bryant's subsequent guilty plea to charges arising from that episode irrelevant to the charges arising from the June 2004 Camden shooting and highly prejudicial to Bryant. The trial court applied the wrong analysis.

A defendant may use other-crimes evidence in support of his defense "if in reason it tends, alone or with other evidence, to

29

negate his guilt of the crime charged against him." Garfole, supra, 76 N.J. at 453. Admissibility of this evidence is governed by N.J.R.E. 401, not N.J.R.E. 404(b). "[T]he question . . . is not relevance as such, but the degree of relevance balanced against the counter considerations expressed in [N.J.R.E. 403] of undue consumption of time, confusion of the issues and the misleading of the jury." Id. at 451.

Here, the relevance of the evidence of Bryant's involvement in the November 2004 Winslow Township shooting to the June 2004 Camden shooting is clear. The sole contested issue at trial was who shot Williams and Hill. The gun used by Bryant in November 2004 was the same gun used to kill Williams and to injure Hill. This is the type of evidence, standing alone or in combination with other evidence, which may establish the guilt of another. In this case, there was evidence presented at trial that Bryant possessed the gun before the shooting and that Bryant, not defendant, shot Williams and Hill in June 2004.

The State also presented evidence that the gun used in the November 2004 Winslow Township shooting was the same weapon used against Williams and Hill in the June 2004 Camden shooting. Moreover, Bryant pled guilty to charges arising from the later shooting. Thus, presentation of the proffered November 2004 other-crimes evidence would not have consumed undue time or confused or misled the jury.

Evaluated in accordance with N.J.R.E. 401, the trial court should have permitted defendant to use Bryant's involvement in the November 2004 Winslow Township shooting defensively at trial.  To be sure, such evidence would have been highly prejudicial to Bryant but that was its purpose.  Such evidence was a key component, but not the only component, of defendant's third-party guilt defense.  Moreover, as recognized by the trial court, if the evidence of Bryant's involvement in the November 2004 Winslow Township shooting was admissible, the trial should have been severed.

The improper disposition of defendant's application to use Bryant's involvement in the Winslow Township shooting and the failure to try defendant separately from Bryant are not the only trial errors.  The State also admitted Bryant's redacted admission that he received the gun used in both shootings after the Camden shooting.  Cross-examination by Bryant's attorney established that Bryant received the gun the night of the Camden shooting.  Defendant contends that this admission, although redacted to omit defendant's name, violated his right to confront a critical witness against him.  We agree.

As a preliminary matter, we reject the argument advanced by defendant that Bryant's 2005 statement cannot be considered an admission against his penal interest and admissible pursuant to N.J.R.E. 803(c)(25).  To be sure, Bryant attempted to exculpate

31

himself from and incriminate defendant in the June 2004 Camden shooting. On the other hand, he also incriminated himself of several weapons offenses. We know of no rule that eviscerates the character of a statement against penal interest and denies admission of the statement because it is a mixture of exculpatory and incriminatory statements. See N.J.R.E. 803(c)(25); cf. State v. White, 158 N.J. 230, 241-44 (1999) (discussing N.J.R.E. 803(c)(25) and applicable case law). On the other hand, even though Bryant's statement may be admissible pursuant to N.J.R.E. 803(c)(25), that does not end the analysis. As a testimonial statement, its use must protect defendant's right to confrontation. Crawford, supra, 541 U.S. at 59, 124 S. Ct. at 1369, 158 L. Ed. 2d at 197.

We recognize that the United States Supreme Court permits use of a co-defendant's statement that does not directly incriminate another defendant as long as all references to the defendant are removed. Richardson, supra, 481 U.S. at 211 n.5, 197 S. Ct. at 1709 n.5, 95 L. Ed. 2d at 188 n.5. If the co-defendant's incriminatory statement requires the jury to make an inferential step to link the statement to the defendant, the statement is admissible. Gray, supra, 523 U.S. at 196, 118 S. Ct. at 1157, 140 L. Ed. 2d at 303; see also Priester, supra, 382 F.3d at 400 (approving use of neutral terms that do not unavoidably tie reference to defendant). On the other hand, a

blank space or use of the word "deleted" in place of a defendant's name is not permissible because it "points to the defendant." Gray, supra, 523 U.S. at 194, 118 S. Ct. at 1156, 140 L. Ed. 2d at 302.

The prosecutor recognized that Bruton prohibited admission of Bryant's November 2005 statement in which he named defendant as the person who gave him the murder weapon after the Camden shooting. This statement unequivocally incriminated defendant as the shooter. Therefore, the prosecutor proposed, and defense counsel agreed, that the reference to defendant would be redacted and the word "someone" would be used in its stead. The prosecutor, counsel, and the trial court also discussed the need to phrase questions in a manner to avoid running afoul of Bruton. When counsel for Bryant sought to establish that Bryant received the weapon in the evening immediately after the Camden shooting, the prosecutor and defendant's counsel objected. Both stated that this additional detail eviscerated any benefit achieved by substituting "someone" for defendant's name.

The prosecutor and defendant's counsel had reason for concern. The simple deletion of defendant's name and insertion of "someone" did not obscure the reference to defendant. Indeed, the prosecutor remarked that she "didn't ask any question about the gun being given to [Bryant] because I was concerned that even though we were not using the name Jahnell

33

Weaver, that it would be easily detectable who we were talking about, so I stayed away from that question completely." Furthermore, Bryant's statement cannot be considered in a vacuum. Considered in the context of the complete trial record, including Goffney's testimony that she saw one of the fleeing men pass something to the other man, the jury was not required to make an inferential step to link defendant to the person referred to in Bryant's statement. As in Vazquez and Richards, there were only four young men involved in this shooting. Two of them were shot and two fled. All of the eyewitnesses identified defendant and Bryant as the two men involved in the verbal altercation with Williams and Hill, and defendant and Bryant were the two young men who fled following the shooting. While the redaction of defendant's name may have passed muster if counsel had not asked when Bryant received the weapon, as soon as the jury learned that Bryant received it from someone that night, the jury had been provided a direct path to defendant.

A defendant is not entitled to a perfect trial. Wakefield, supra, 190 N.J. at 537. A defendant is entitled to a fair trial. Ibid. In some circumstances, it is difficult to identify a single error that deprives a defendant of a fair trial. This is one of those cases. Here, we have a collection of errors, one of which involves a violation of defendant's

34

right to confront a witness, namely his co-defendant, to contest the accusation that defendant was the shooter.

The State contends that the admission of Bryant's November 2005 statement did not violate Bruton. In the alternative, it asserts that if the jury could readily find that the "someone" who gave Bryant the gun was defendant, the error should be reviewed as plain error because the added detail was provided by defense counsel and defendant's counsel did not object. The record belies that assertion. Bryant's attorney, not defendant's attorney, introduced the added detail about the timing of Bryant's receipt of the gun. Furthermore, the prosecutor and defendant's attorney both objected and sought to prevent the introduction of the evidence regarding when Bryant received the gun.

The Attorney General argues that any Bruton violation must be considered de minimis due to the overwhelming evidence of defendant's guilt. According to the Attorney General, the weight of the evidence permits this Court to conclude that the error was harmless beyond a reasonable doubt. That argument requires this Court to conclude that no other error, singly or collectively, contributed to the verdict of guilt. The record does not permit us to do so.

The evidence marshalled by the State to support a finding by the jury that defendant shot and killed Williams and shot and

35

severely wounded Hill was strong, but it was not overwhelming. As we have noted throughout this opinion, the universe of possible shooters was small. Either defendant or Bryant shot Williams and Hill, and there was evidence that would have permitted a jury to find that Bryant shot the two young men.

Hill, one of the victims, identified Bryant as the shooter soon after his discharge from the hospital. According to the defense investigator who interviewed him, Hill identified Bryant without any hesitation or equivocation. When he recanted, Hill did not name defendant as the person who shot him. He maintained that he was not sure who shot him. Similarly, DeShields, an eyewitness who knew the four participants, identified Bryant as the shooter four or five hours after the shooting. Later, DeShields explained he was drunk and not sure what he observed that evening; however, the investigator who took his statement detected no signs of intoxication. He, too, never identified defendant as the shooter. Pratt did not expressly identify Bryant by name but testified that Bryant possessed the gun earlier in the evening, described seeing a casted arm rise, and then hearing gunshots. No witness disputed that Bryant wore a white cast on his right arm.

Viewed against this evidence, Bryant's statement that he received the murder weapon from defendant immediately following the shooting directly incriminates defendant, corroborates

36

Goffney's testimony that she saw the men exchange an object as they fled, and strengthened the State's case against defendant. Still, this was not the only error.

Defendant's defense strategy was that Bryant was the shooter. While all of the evidence identifies defendant as the person engaged in a heated verbal exchange with Williams, defendant always maintained that Bryant carried the gun that evening and that he shot Williams and Hill. To establish Bryant's involvement, he sought to introduce evidence that Bryant not only had the murder weapon in his possession after the June 2004 Camden shooting but also used it in another shooting five months later. As previously discussed, the trial judge applied the Cofield analysis rather than the N.J.R.E. 401 analysis to consider defendant's defensive 404(b) other-crimes evidence. Furthermore, the use of the erroneous analytical framework informed not only his decision to exclude relevant and unrefuted other-crimes evidence but also informed the decision to deny defendant's application for severance.

This is a classic case of several errors, none of which may have independently required a reversal and new trial, but which in combination dictate a new trial. Defendant's defense strategy of third-party guilt was not farfetched. Use of the November 2004 Winslow Township shooting evidence would have added some strength to that strategy but could not be presented

37

at a joint trial.  The combined impact of these errors does not permit us to conclude that the cumulative error was harmless beyond a reasonable doubt, therefore, a new trial is required.

V.

The judgment of the Appellate Division is reversed and the matter is remanded for a new trial.

CHIEF JUSTICE RABNER, and JUSTICES LaVECCHIA, ALBIN, PATTERSON, and FERNANDEZ-VINA, and JUDGE RODRÍGUEZ (temporarily assigned) join in JUDGE CUFF's opinion.

SUPREME COURT OF NEW JERSEY

NO.    A-104                         SEPTEMBER TERM 2011

ON CERTIFICATION TO      Appellate Division, Superior Court


STATE OF NEW JERSEY,

        Plaintiff-Respondent,

                v.

JAHNELL WEAVER,

        Defendant-Appellant.


DECIDED            September 8, 2014
                   Chief Justice Rabner                    PRESIDING
OPINION BY                Judge Cuff
CONCURRING/DISSENTING OPINIONS BY
DISSENTING OPINION BY

| CHECKLIST | REVERSE AND REMAND | |
|---|---|---|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | X | |
| JUSTICE PATTERSON | X | |
| JUSTICE FERNANDEZ-VINA | X | |
| JUDGE RODRIGUEZ (t/a) | X | |
| JUDGE CUFF (t/a) | X | |
| TOTALS | 7 | |