# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0179-16T3

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

M.J.M.,

     Defendant-Appellant.

_____

> Argued September 13, 2018 – Decided February 27, 2019
>
> Before Judges Koblitz, Ostrer and Currier.
>
> On appeal from Superior Court of New Jersey, Law Division, Monmouth County, Indictment No. 07-08-1970.
>
> John Vincent Saykanic argued the cause for appellant.
>
> Carey J. Huff, Assistant Prosecutor, argued the cause for respondent (Christopher J. Gramiccioni, Monmouth County Prosecutor, attorney; Cary J. Huff, of counsel and on the brief).

PER CURIAM

This case returns to us after remand and a new trial.  See State v. M.M. (M.M. I), No. A-2747-09 (App. Div. Nov. 9, 2012) (slip op.).  At retrial, a jury convicted defendant of sexually assaulting and endangering his then-minor daughter multiple times.  Defendant challenges the sufficiency of evidence and raises, mostly as plain error, multiple claims of evidentiary error and prosecutorial misconduct.  Having reviewed his arguments in light of the record and applicable principles of law, we affirm.

I.

We assume the reader's familiarity with the principal facts in this case. The State alleged that between 2002 and 2007, defendant sexually assaulted his daughter, N.M., who was then between ten and fifteen years old.  The alleged assaults began with defendant regularly touching N.M.'s clothed breasts, vagina, and buttocks.  By 2007, it escalated to his penetrating her with his penis and fingers multiple times.  The State also alleged defendant threatened her with violence if she reported the abuse.  N.M. lived with her parents and two older sisters.

After a 2009 trial, the jury convicted defendant and the trial court sentenced him to an aggregate twelve-year term.  He appealed, and we reversed and remanded for a new trial.  We relied on the cumulative impact of three

errors: the admission of N.M.'s hearsay statements to a teacher and vice-principal; the prosecutor's improper vouching for N.M. and a police witness; and the placement of a screen that blocked the public from viewing N.M.'s in-court testimony. M.M. I, slip op. at 11.

At the 2016 retrial, the State's principal witness was N.M., who was then twenty-four. Also testifying were her older sister; her school guidance counselor to whom she first disclosed the assaults; a sexual assault nurse examiner (SANE nurse), who testified as a fact and expert witness; and the psychologist who treated her after her disclosure. The State read the 2009 testimony of N.M.'s mother, who died in 2010, and played most of defendant's lengthy, video-recorded custodial interview, in which he denied the assaults. After the State rested, the court denied defendant's motion for acquittal.

Defendant called character witnesses, including his father, but did not testify himself. He also called a SANE nurse, Karen Nittoli, as an expert in female anatomy and types of physical changes indicative of sexual assault.

The jury convicted defendant of: first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(2) (Count One); second-degree sexual assault, N.J.S.A. 2C:14-2(b) (Count Two); second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a) (Count Three); third-degree aggravated criminal sexual

contact, N.J.S.A. 2C:14-3(a) (Count Four); and acquitted defendant of third-degree terroristic threats, N.J.S.A. 2C:12-3(a) (Count Five). The trial court sentenced defendant to an aggregate twelve-year term of imprisonment subject to the No Early Release Act, N.J.S.A. 2C:43-7.2, and parole supervision for life pursuant to Megan's Law, N.J.S.A. 2C:7-1 to -23.

On appeal, defendant presents the following arguments.

> I. THE TRIAL COURT ERRED IN PERMITTING THE STATE TO UTILIZE THE SANE NURSE WALKER TO OPINE IMPROPERLY AS TO THE PRESENCE OR ABSENCE OF A HYMEN; THIS PROSECUTORIAL MISCONDUCT DENIED DEFENDANT A FAIR TRIAL AND DUE PROCESS OF LAW.
>
> II. THE TRIAL COURT ERRED IN PERMITTING THE PROSECUTOR TO CROSS-EXAMINE (AND DISCREDIT) THE DEFENSE EXPERT NITTOLI WITH A HEARSAY MAGAZINE ARTICLE; THIS PROSECUTORIAL MISCONDUCT DEPRIVED DEFENDANT OF HIS DUE PROCESS RIGHT TO A FAIR TRIAL.
>
> III. THE IMPROPER STATE'S OPENING AND CLOSING STATEMENTS CONSTITUTE AND ARE A PART OF A PATTERN OF PROSECUTORIAL MISCONDUCT WHICH DEPRIVED DEFENDANT OF HIS SIXTH AMENDMENT RIGHT TO A FAIR TRIAL AND FOURTEENTH AMENDMENT DUE PROCESS RIGHT AND STATE CONSTITUTIONAL RIGHT TO A FAIR TRIAL; THE PROSECUTOR I) IMPROPERLY SHIFTED THE BURDEN OF PROOF IN HER OPENING STATEMENT; II) IMPROPERLY

4

DENIGRATED THE DEFENSE AND DEFENDANT; III) IMPROPERLY VOUCHED FOR AND BOLSTERED THE CREDIBILITY OF N.M.; AND IV) IMPROPERLY MISSTATED THE RECORD.

IV. THE TRIAL COURT IMPROPERLY PREVENTED DEFENSE COUNSEL FROM UTILIZING THE WORD "PSYCHOSIS" DURING SUMMATION IN VIOLATION OF HIS DUE PROCESS RIGHT TO A FAIR TRIAL.

V. THE CUMULATIVE IMPACT OF THE NUMEROUS ERRORS AND MISCONDUCT BY BOTH THE TRIAL COURT AND PROSECUTOR DEPRIVED DEFENDANT OF HIS DUE PROCESS RIGHT TO A FAIR TRIAL.

VI. THE COURT BELOW ERRED IN DENYING THE MOTION FOR JUDGMENT OF ACQUITTAL AS TO EACH COUNT AS THE STATE DID NOT PROVE DEFENDANT'S GUILT BEYOND A REASONABLE DOUBT; THE DEFENDANT'S CONVICTIONS ARE CONTRARY TO THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND NEW JERSEY STATE CONSTITUTION.

VII. THE CONVICTIONS ARE AGAINST THE WEIGHT OF THE EVIDENCE AND IS CONTRARY TO THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND NEW JERSEY STATE CONSTITUTION.

VIII. THE ADMISSION OF PHOTOGRAPHS DEPICTING ALLEGED INJURIES TO N.M. DEPRIVED THE DEFENDANT OF HIS DUE PROCESS RIGHT TO A FAIR TRIAL AS THE PROBATIVE VALUE WAS SUBSTANTIALLY

OUTWEIGHED BY THE RISK OF UNDUE PREJUDICE.

## II.

The issue arose at trial whether the state of N.M.'s anatomy – specifically, that she had an intact hymen – tended to disprove her claim that her father repeatedly engaged in penile-vaginal penetration. Defendant argues, as plain error: (1) the State's expert lacked the qualifications and basis to opine that an intact hymen is irrelevant in determining whether a woman was sexually assaulted; and (2) the State should not have been permitted to confront the defense expert, who took the contrary view, with a journal article that challenged her position. We are unpersuaded.

## A.

Although the State initially called the SANE nurse who examined N.M. as a fact witness, the State elicited her education and training at some length. Molly Walker, R.N., testified she holds a B.S. from Vanderbilt University in nursing; an M.S. from the University of Pennsylvania; and licenses to practice nursing and midwifery. She testified she was a primary care provider of obstetrical and gynecological care of women and performed thousands of gynecological exams. She obtained training and certification to be a SANE

6

A-0179-16T3

nurse in 2002, and thereafter as a pediatric SANE nurse. She personally performed 145 examinations of alleged sexual assault victims.

She testified that, in examining N.M., she found irritation on the labia minora and redness and split skin in the posterior fouchette. There were no injuries to the vaginal canal or cervix. Walker said it was not her role to determine the cause of any injuries or conditions.

On cross-examination, defense counsel elicited Walker's finding that N.M.'s hymen was intact at "two o'clock" and "nine o'clock," referring to positions around the vaginal opening. That prompted the State to ask on redirect whether the presence of a hymen contraindicated sexual activity. The defense objected that the question called for an expert opinion. The court agreed. The State then offered Walker as an expert, based on the qualifications already elicited. Defense counsel conducted a short additional voir dire, but did not object to Walker's qualifications. The court then qualified her to testify as an expert in female genital anatomy.

Upon redirect, she testified that the presence of an intact or a partially intact hymen does not mean that a woman has never had sexual intercourse. On re-cross, she stated that the condition of the hymen was irrelevant to whether someone was "sexually active."

A-0179-16T3

Defendant called another SANE nurse, Karen Lynn Nittoli, R.N., to counter Walker's opinion. A registered nurse, Nittoli helped establish the sexual assault response team in Morris County, and participated in or supervised 300 to 400 sexual assault cases. Without objection, the court qualified her as an expert in "female anatomy and types of physical changes indicative of sexual assault."

Though she agreed with Walker's physical observations, she disagreed about their significance. Nittoli disputed that the evidence supported the conclusion that N.M. was assaulted. In particular, Nittoli stated that the condition of the hymen is relevant to determining whether someone was sexually assaulted or sexually active, and she would expect the hymen of a fifteen-year-old who had intercourse repeatedly not to be intact. She also stated that the irritation could have been caused by masturbation, which N.M. admitted doing, tight pants, or other benign activities.

On cross-examination, Nittoli conceded that, though improbable, it was not impossible that a person with an intact hymen like N.M.'s could have "had sex." The State confronted Nittoli with a 2004 article from Pediatrics, the journal of the American Academy of Pediatrics, which Nittoli acknowledged was a renowned authority on pediatric care. Entitled "Normal Does Not Mean

A-0179-16T3

Nothing Happened," the article reported a study of thirty-six pregnant "adolescent girls who presented for sexual abuse evaluations . . . [which were] performed to determine the presence or absence of genital findings that indicate penetrating trauma." Per the article, the study found that only two of the thirty-six test subjects "had genital changes that were diagnostic of penetrating trauma." The article concluded that "[m]edical, legal, and social professionals as well as lay jurors need to understand that, in most cases of child sexual abuse, there will be few if any clinical findings that are diagnostic of penetrating trauma."

Nittoli said she was surprised by the finding that only two of the thirty-six girls studied had definitive findings of penetration. She also disagreed with a quotation from the article that "there will be few, if any, clinical findings that are diagnostic of penetrating trauma." Nittoli also rejected the assertion, as summarized by the prosecutor, "that even in the face of clear genital contact, i.e.[,] pregnancy, the examination may be nonspecific or 'normal.'" She insisted that it was improbable that a young woman would have an intact hymen after multiple incidents of penile-vaginal penetration.

B.

We review the trial court's evidentiary rulings for an abuse of discretion, mindful that we may "not substitute [our] own judgment for that of the trial court, unless 'the trial court's ruling was so wide of the mark that a manifest denial of justice resulted.'" State v. Terrel, 452 N.J. Super. 226, 248 (App. Div. 2016) (quoting State v. Kuropchak, 221 N.J. 368, 385 (2015)). Generally, we leave the qualification of expert witnesses to the trial court's discretion. Ibid. Since defendant specifically waived any objection to Walker's qualifications as an expert, he must demonstrate plain error, that is, error that is "clearly capable of producing an unjust result." R. 2:10-2.

We discern no error, let alone plain error, in the court's decision to qualify Walker. Expert opinion testimony is admissible if "the expert is qualified by knowledge, skill, experience, training, or education." State v. Moore, 122 N.J. 420, 458-59 (1991). Walker had extensive training and experience in providing primary gynecological care and examining alleged victims of sexual assault. The trial court did not err in permitting her to testify as an expert on female genital anatomy.

Nor are we obliged to reach defendant's argument that the court erred in permitting Walker to opine about the significance of an intact hymen because it

10

lacked a sufficient basis. An expert's opinion must be grounded in "facts or data derived from (1) the expert's personal observations, or (2) evidence admitted at the trial, or (3) data relied upon by the expert which is not necessarily admissible in evidence but which is the type of data normally relied upon by experts." State v. Townsend, 186 N.J. 473, 494 (2006); see N.J.R.E. 703. An expert is required to "give the why and wherefore" of his or her opinion, rather than a bare conclusion. Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 372 (2011).

We recognize that Walker did not explain her conclusion that an intact hymen did not disprove a sexual assault. However, defense counsel did not object to Walker's testimony. Apparently, the approach was strategic, to avoid giving Walker the opportunity to strengthen her opinion, which contradicted what defense counsel believed was common thinking. See State v. Marshall, 123 N.J. 1, 93 (1991) (stating that "except in the most extreme cases, strategic decisions made by defense counsel will not present grounds for reversal on appeal").

Defense counsel declined to explore the basis of Walker's conclusion in cross-examination, apparently for the same reason he declined to object. However, the place to challenge an expert's testimony is at trial. See Townsend

11

v. Pierre, 221 N.J. 36, 55 (2015) (stating that a party may always subject an expert to vigorous cross-examination to challenge the basis of an opinion) (citing State v. Harvey, 151 N.J. 117, 277 (1997)).

We therefore deem the argument that Walker's opinion lacked basis to have been waived. Furthermore, we are not obliged to reach an issue not raised before the trial court that does not affect the court's jurisdiction or a matter of great public interest. Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973).

Our Supreme Court has "insisted that, in opposing the admission of evidence a litigant must 'make known his position to the end that the trial court may consciously rule upon it.'" State v. Robinson, 200 N.J. 1, 19 (2009) (quoting State v. Abbott, 36 N.J. 63, 76 (1961)). Absent that requirement, counsel would have "'an incentive . . . for acquiescing through silence . . . and, when [rulings] can no longer be corrected at the trial level, unveiling them as new weapons on appeal.'" Ibid. (quoting Frank M. Coffin, On Appeal: Courts, Lawyering, and Judging 84-85 (W.W. Norton & Co. 1994)). While we retain the "authority to 'notice plain error not brought to the attention of the trial court[,]' provided it is 'in the interests of justice' to do so," that authority is "not intended to supplant the obvious need to create a complete record and to preserve issues for appeal." Id. at 20 (quoting R. 2:10-2). Otherwise, the "interests of

12

justice" standard of <u>Rule</u> 2:10-2 would "render as mere surplusage the overarching requirement that matters be explored first and fully before the trial court." <u>Ibid.</u>

In any event, we discern no unjust result. We have no doubt that had an objection been raised, the State would have laid the appropriate foundation for Walker's opinion by eliciting the why and wherefore of her conclusion, grounded in her academic training and her personal observations in the course of hundreds of OB-GYN and sexual assault examinations.

C.

We also reject defendant's argument that the State improperly introduced the <u>Pediatrics</u> journal article while cross-examining Nittoli. As defense counsel did not object at trial, we apply a plain error analysis here as well. However, no error occurred, as the court properly admitted the article under the "learned treatises" exception to the hearsay rule. N.J.R.E. 803(c)(18).

In cross-examining an expert witness, a party may introduce a hearsay statement "contained in published treatises, periodicals, or pamphlets on a subject of history, medicine, or other science or art," that is "established as a reliable authority by testimony or by judicial notice." N.J.R.E. 803(c)(18).

A-0179-16T3

Counsel may not submit the statement as an exhibit but may read it into evidence. Ibid.

While defendant now stridently challenges the validity and applicability of the study reported in the Pediatrics article, Nittoli conceded that Pediatrics was an authoritative source. Defense counsel had the opportunity to elicit limitations or shortcomings in the article through redirect of his expert or presenting articles with a contrary view. He did not do so.[1] He may not relitigate his case on appeal. In any event, his arguments address not the article's admissibility but its weight.[2]

---

[1]  Notably, on appeal, defendant does not cite any scientific authority for his contentions about female anatomy, although the alleged correlation between physical findings and abuse or non-abuse is an area of scientific discourse. See, e.g., Lindstadt v. Keane, 239 F.3d 191, 201-02 (2d Cir. 2001) (citing articles). In particular, he contends that cases of intact hymens following sexual intercourse occur only with limited penetration of the vaginal vestibule, but that N.M. alleged "full penile penetration." However, he references no authoritative source to support his scientific premise, nor N.M.'s testimony to support his factual contention as to the extent of defendant's penetration of N.M.

[2]  We note that other experts have expressed a similar view. See, e.g., People v. Brown, 883 P.2d 949, 953 (Cal. 1994) (noting expert's opinion "that 60 percent of molested children do not demonstrate 'any physical findings' of molestation"); Collins v. Commonwealth, 951 S.W.2d 569, 574 (Ky. 1997) (stating that trial court properly admitted expert's testimony that "it was not uncommon to still have a hymen" and that "approximately fifty percent of the sexually active women she examined retained a hymen").

A-0179-16T3

III.

We are also unpersuaded by defendant's claims of prosecutorial misconduct. Prosecutors "may comment on the facts shown by or reasonably to be inferred from the evidence." State v. Carter, 91 N.J. 86, 125 (1982). However, a prosecutor may not make "inaccurate legal or factual assertions"; refer to evidence not in the record; ridicule the defendant, defense counsel, or the defense's theory of the case; or suggest a police officer is believable because of his or her status. State v. Frost, 158 N.J. 76, 84-86 (1999). However, to warrant reversal, prosecutorial misconduct must be "so egregious that it deprived the defendant of a fair trial." Id. at 83. In making this assessment, a reviewing court "must consider (1) whether defense counsel made timely and proper objections to the improper remarks; (2) whether the remarks were withdrawn promptly; and (3) whether the court ordered the remarks stricken from the record and instructed the jury to disregard them." Ibid.

Measured against this standard, we discern no basis to disturb the jury verdict for alleged prosecutorial misconduct. Defendant contends the prosecutor's opening statement improperly placed the burden of proof on defendant. In fact, the prosecutor simply invited the jury to examine defendant's demeanor during his videotaped custodial interview, when he was informed of

15

N.M.'s allegations and asked to respond. Nonetheless, when defense counsel objected, the court swiftly instructed the jury, "It may be in the video, but I reiterate that the State bears the burden of proof. Defendants are presumed to be innocent. They don't need to prove anything. Go ahead." Although we are not convinced the prosecutor's remark shifted the burden, the court addressed any conceivable prejudice with its prompt instruction.

Defendant also argues the State, in summation, denigrated defendant and his defense and misstated the record in various respects. However, we discern no misconduct. Defense counsel raised no objections, except to a characterization of Walker's and Nittoli's testimony, which prompted an instruction that the jury must decide whom to believe and should not take the lawyer's statements as fact. Without reviewing every other allegation in detail, we note that the prosecutor fairly characterized the defense approach as urging the jury to "disregard everything [N.M.] said, throw it all out because she has mental issues. She's crazy." The prosecutor reasonably argued that the visual evidence of N.M.'s injuries was highly probative while defendant's attempt to explain N.M.'s injuries was implausible. Also, the prosecutor's minor mistake in stating that N.M.'s mother went to bed at 8:00 p.m., when the evidence showed

16

she went to bed at 9:00 p.m., had no great significance. The jury was instructed that they were the judges of the facts.

IV.

Defendant's remaining arguments warrant only brief comment.

The trial court did not improperly prevent defense counsel in summation from using the term "psychosis" to describe N.M.'s psychological condition. Defendant relied on an out-of-court comment N.M. reportedly made to a medical professional describing the side effect of a medication. However, N.M. was not competent to assign a medical diagnosis to her symptoms. Although there was evidence that N.M. suffered from other emotional health problems, including depression and "conversion disorder," neither side introduced admissible evidence from an expert competent to diagnose N.M. as psychotic. See State v. Loftin, 146 N.J. 295, 347 (1996) (stating that "[t]he scope of defendant's summation . . . must not exceed the 'four corners of the evidence.'") (quoting State v. Reynolds, 41 N.J. 163, 176 (1963)).

We also reject defendant's argument that the cumulative effect of several trial court decisions denied him a fair trial. Notably, defendant does not cite any legal authority for his claim that the trial decisions were individually erroneous.

A-0179-16T3

There can be no cumulative error without individual errors, let alone prejudicial ones. See State v. Weaver, 219 N.J. 131, 155 (2014).

We note briefly that the court did not err in permitting the State to present, pursuant to N.J.R.E. 404(b), evidence of a cruise in Mexico that defendant took with N.M. and no other family members. N.M. testified that during that trip, defendant for the first time touched her under her clothing. Although the indictment did not charge his actions in Mexico, they were relevant to a material issue by demonstrating how defendant groomed N.M. for more intrusive acts. N.M. testified that after the Mexico trip, defendant's behavior escalated. See State v. Garrison, 228 N.J. 182, 197 (2017) (holding that the State may introduce evidence of an uncharged act of sexual assault on a child to show a defendant's "plan to further desensitize [the child] to sexual conduct so that he could continue to abuse her").

Nor did the court err in admitting the prior trial testimony of N.M.'s mother, who had died before the retrial. The testimony was admissible under N.J.R.E. 804(b)(1)(A), which allows "[t]estimony given by a witness at a prior trial of the same or a different matter . . . if the party against whom the testimony is now offered had an opportunity and similar motive in the prior trial . . . to

develop the testimony by examination or cross-examination." Defendant had such an opportunity.

The court also did not err in allowing a police officer to describe his lay opinion that N.M., shortly after she disclosed her father's abuse, did not seem "insane" or "not in touch with reality." The question did not call for a mental health diagnosis but for a lay opinion, akin to a lay opinion whether a person appeared intoxicated based on observable behaviors. See State v. McLean, 205 N.J. 438, 457 (2011).

Finally, the court did not err in denying defendant's motion for a judgment of acquittal after the State rested. As the trial court properly found, after extending the State all favorable inferences, a jury could find guilt beyond a reasonable doubt based on N.M.'s testimony and the circumstantial evidence presented by other witnesses. See R. 3:18-1; State v. Williams, 218 N.J. 576, 593-94 (2014).

As defendant did not move for a new trial after verdict, he did not preserve his additional argument that the convictions were against the weight of evidence. See R. 2:10-1; State v. Smith, 262 N.J. Super. 487, 511 (App. Div. 1993) (holding an appellate court may refuse to entertain a claim that a verdict was against the weight of the evidence in a criminal trial where the defendant did not

move for a new trial below).  In any event, it does not "clearly appear[] that there was a miscarriage of justice under the law."  R. 2:10-1.  As the jury could rationally have found defendant guilty beyond a reasonable doubt, we may not disturb the verdict.  Smith, 262 N.J. Super. at 512.

To the extent not addressed, defendant's remaining arguments lack sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION