**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5841-17T4

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

V.

KRYSTAL G. JAMES,

      Defendant-Appellant.

_____

Argued November 18, 2020 – Decided February 5, 2021

Before Judges Whipple, Rose, and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Indictment No. 17-06-1632.

Sean P. Fulton, Designated Counsel, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Sean P. Fulton, on the briefs).

Linda A. Shashoua, Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for respondent (Jill S. Mayer, Acting Camden County Prosecutor, attorney; Linda A. Shashoua, of counsel and on the brief).

PER CURIAM

Tried to a jury, defendant Krystal G. James was convicted of robbery, burglary, and conspiracy offenses for her involvement in a home invasion in Lindenwold. Following appropriate mergers, defendant was sentenced to an aggregate six-year term of imprisonment; she must serve eighty-five percent of that term under the No Early Release Act, N.J.S.A. 2C:43-7.2. During the multi-day jury trial, the State presented the testimony of seven witnesses, including co-defendant, Hector Millan, and the victim, Antonio Banks; and introduced in evidence numerous exhibits, including defendant's video-recorded statement.

Defendant now appeals, raising belated challenges to the admission in evidence of her custodial statement to law enforcement. More particularly, defendant raises the following points for our consideration:

POINT ONE

THE DETECTIVE'S MULTIPLE REFERENCES TO DEFENDANT'S PRIOR BAD ACTS DURING HER CUSTODIAL INTERROGATION SHOULD HAVE BEEN EXCLUDED UNDER RULE 404(b).
(Not raised below)

POINT TWO

EVEN IF THE OTHER BAD ACTS EVIDENCE WAS ADMISSIBLE – IT WAS NOT – THE COURT WAS REQUIRED TO GIVE A LIMITING INSTRUCTION BOTH WHEN THE EVIDENCE WAS FIRST

PRESENTED AND DURING THE FINAL JURY
CHARGE. (Not raised below)

POINT THREE

DEFENDANT'S STATEMENT TO POLICE SHOULD
HAVE BEEN SUPPRESSED BECAUSE DETECTIVE
TOMASETTI HAD REASON TO BELIEVE
[DEFENDANT] LACKED CAPACITY TO WAIVE
HER CONSTITUTIONAL RIGHTS. ([Partially] raised
below)

We reject the contentions raised in points I and III. Although we agree, in part, with defendant's assertions raised in point II, we conclude the error was not "clearly capable of producing an unjust result." R. 2:10-2; see also R. 1:7-5. We therefore affirm.

I.

In the early morning hours of March 27, 2017, local police were dispatched to Banks's ground floor apartment, following a call from the victim's twelve-year-old daughter reporting a burglary in progress. Upon their arrival, officers saw Millan fleeing the apartment, wearing a mask. Millan ran directly into an officer and was arrested. Other officers entered the apartment and saw evidence of a struggle: the apartment was in disarray; Banks was bleeding from both his mouth and a puncture wound to his back. Police recovered a screwdriver used by Millan during the attack.

Defendant, who had been staying temporarily with Banks and his daughter, also was present in the apartment when the officers arrived. Banks and defendant told police they could not identify the masked man who entered the apartment and attacked Banks, but discerned by his "voice" that he was Hispanic.

Defendant stated she had stepped outside Banks's apartment just prior to the incident because she was anticipating the arrival of someone, whose name she could not provide. While she was waiting, Banks saw a man smoking a cigarette nearby. This man followed defendant into Banks's apartment, brandished a screwdriver, and demanded money. Defendant said the perpetrator was not the person she had been waiting for.

When police told defendant that a suspect had been arrested, she asked whether the man had tattoos. Police answered affirmatively; defendant exclaimed, "I knew it!" Upon further inquiry, defendant told police that just prior to her stay with defendant, she had been living in an abandoned apartment in the same complex "with an Hispanic guy [who] had tattoos on his neck and arms." Defendant claimed she did not know that man's name, but became more talkative and disclosed a potential motive for the robbery. Defendant told police Banks sold "liquor, cigarettes, [and] condoms" to other residents of the complex.

4

Police were suspicious of defendant's evolving account of the incident, but did not arrest her at that time.

Meanwhile, after he was arrested, Millan waived his Miranda[1] rights and implicated himself and defendant in the robbery.  Millan said defendant told him Banks kept liquor, cigarettes, and money in his apartment, and their location therein.  Millan and defendant agreed that defendant would open the door to the apartment, and Millan would enter and rob Banks.  Millan acknowledged he knew Banks was home at the time and force would be necessary to commit the theft.

One week after the incident, members of the Lindenwold Borough Police Department brought defendant to headquarters for questioning.  After waiving her Miranda rights, defendant signed and dated the form, and agreed to give a statement to Detective Joseph Tomasetti.  At the outset of the interview, Tomasetti indicated defendant knew him because the detective had "talked to [her] before."

Defendant told Tomasetti she had been waiting for someone to arrive at Banks's apartment to deliver crack cocaine at the time of the incident.  She claimed the reason she went outside and spoke with Millan was to "make sure"

---

[1]  Miranda v. Arizona, 384 U.S. 436 (1966).

A-5841-17T4

he was not the person who was supposed to sell her drugs. Defendant denied she knew Millan, but acknowledged she had his cellphone number and texted him the day before the incident.

After Tomasetti revealed he had searched defendant's cellphone and discovered she called Millan ten minutes before the incident, she became more forthcoming. According to defendant, Millan "said he was in need of money." She stated the door to Banks's apartment "was locked at first. And then . . . [she] went out there to check, because [she] was waiting on somebody to drop some [sic] off, so [she] left it unlocked." Defendant also admitted she took Banks's safe, containing "a few dollars," when she ultimately left his apartment.

During the course of this exchange with defendant, Tomasetti acknowledged he did not believe she "meant [for Banks] to get . . . hurt." Instead, Tomasetti twice said: "You have a problem." The detective also remarked that defendant "need[ed] help" and she should "try to get clean." At the conclusion of her statement, defendant was arrested.

Thereafter, defendant and Millan were charged in a Camden County indictment with first-degree armed robbery, N.J.S.A. 2C:15-1(a)(1) (count one); second-degree conspiracy to commit robbery, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:15-1(a)(1) (count two); second-degree burglary, N.J.S.A. 2C:18-2(a)(1)

(count three); and second-degree conspiracy to commit burglary, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:18-2(a)(1) (count four).[2]

During a break in jury selection, the trial judge conducted an N.J.R.E. 104(c) hearing on the State's motion to admit defendant's custodial statement. Defendant raised two specific challenges to the admission of her statement, contending she: (1) experienced physical discomfort during the interview due to a "sore on her buttocks" that "obviously would have affected the credibility [sic] of the statement"; and (2) told Tomasetti "she had done too many drugs," which "indicated she was under the influence, and affected the voluntariness of her statement, and her ability to waive the right to remain silent."

After considering the testimony of Tomasetti and reviewing defendant's nearly twenty-seven-minute video-recorded statement in its entirety, the trial judge determined defendant made a "knowing, voluntary and intelligent waiver of her Miranda rights." The judge found defendant "appeared to understand the [Miranda] questions"; "[s]he responded to the questions"; and "[h]er answers were clear."

---

[2] Millan also was charged separately in three additional counts with aggravated assault and weapons offenses for stabbing Banks with the screwdriver.

7

Addressing defendant's argument that her will was overborne because she was physically uncomfortable and under the influence of drugs, the judge found defendant's demeanor established otherwise. According to the trial judge, defendant's physical discomfort did not prohibit her from providing "an ongoing, knowing, voluntary and intelligent waiver of her <u>Miranda</u> rights" and participating in a "detailed conversation" about the present matter and other matters in which she was involved. After defendant stated, "I don't remember. Oh my God. I did too many drugs," the judge noted defendant "attempted to mislead or dodge some of the early interview questions" until Tomasetti confronted her with inculpatory evidence in this case.

The trial judge therefore rejected defendant's arguments, ultimately concluding defendant exhibited "a level of lucid responsiveness and clarity" suggesting defendant's "senses were not impaired at the time that she gave this statement, and her will was not overborne." The judge therefore admitted defendant's statement, subject to redactions that had been agreed upon by the parties.[3]

---

[3] After oral argument before us, defendant's appellate counsel provided a disc containing defendant's redacted video-recorded statement, which is about sixteen minutes in duration. The disc is mislabeled, indicating it is an "unredacted" copy of the statement. We nonetheless glean from the record that

That same day, the judge heard argument on defendant's motion to exclude evidence of defendant's alleged theft of the safe, as other crime evidence under N.J.R.E. 404(b). In an oral decision, the judge denied defendant's motion, finding the alleged theft was intrinsic to the robbery charge.[4]

Millan testified at trial pursuant to a cooperating plea agreement with the prosecution. Millan's trial testimony was consistent with his post-arrest statement and corroborated Banks's testimony. Banks further stated that during the melee, he asked defendant to grab his bat from the other room and strike Millan. Defendant did so, but with insufficient force to break up the melee. Defendant did not testify or offer any evidence on her behalf.

After deliberating about half a day, the jury returned a verdict of guilty as charged on count three; and a guilty verdict on the lesser-included offenses of second-degree robbery on count one, and conspiracy to commit theft by unlawful taking, a disorderly persons offense, on counts two and four. Following defendant's sentencing, she filed this appeal.

---

the redactions primarily pertained to defendant's statements about another robbery.

[4] On this appeal, defendant does not challenge the denial of her N.J.R.E. 404(b) motion.

Initially, we consider defendant's assertions raised in point III, which were partially raised below. On appeal, defendant refines her challenges to the voluntariness of her statement, now arguing Tomasetti knew she was a drug addict from their prior dealings, but "failed to ask a single question about whether [she] was under the influence or otherwise had the capacity to waive her rights." Because these contentions were not raised before the trial judge, we view defendant's arguments through the prism of the plain error standard. R. 1:7-5; R. 2:10-2.

Appellate courts "review the trial court's factual findings as to defendant's Miranda waiver in accordance with a deferential standard." State v. Tillery, 238 N.J. 293, 314 (2019). After a testimonial hearing, we "defer to the trial court's factual findings because the trial court has the 'opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'" State v. S.S., 229 N.J. 360, 374 (2017) (citations omitted).

Our deference extends to a trial court's determinations based on the review of a video, like here, because of the court's "experience and expertise in fulfilling the role of factfinder." Id. at 380. We must uphold the court's findings when they "are supported by sufficient credible evidence in the record." Id. at 374

(citation omitted). We therefore "should not disturb a trial court's factual findings unless those findings are 'so clearly mistaken that the interests of justice demand intervention and correction.'" Id. at 374 (citation omitted). The trial court's interpretation of the law and "the consequences that flow from established facts are not entitled to any special deference." State v. Gamble, 218 N.J. 412, 425 (2014).

Although a defendant's statement is not excluded as hearsay in a criminal trial against her, "the admissibility of a defendant's statement which is offered against the defendant is subject to Rule 104(c)." N.J.R.E. 803(b). "It is the State that must prove, beyond a reasonable doubt, that a defendant's statement was voluntary and, if made while in custody, that the defendant knowingly, voluntarily, and intelligently waived the rights afforded him [or her] under Miranda." State v. Gore, 205 N.J. 363, 382 (2011). In determining whether a Miranda waiver was made knowingly, intelligently, and voluntarily, "courts traditionally assess the totality of circumstances surrounding the arrest and interrogation," including the "suspect's previous encounters with the law." State v. Presha, 163 N.J. 304, 313 (2000) (citation omitted); see also State v. Nyhammer, 197 N.J. 383, 402 (2009).

As noted by the trial judge, the video recording of the statement demonstrated defendant's responses to her Miranda warnings – and Tomasetti's questioning throughout the less-than-thirty-minute statement – were "lucid"; her "senses were not impaired"; and "her will was not overborne." Having considered the judge's findings, which are supported by substantial credible evidence in the record, see S.S., 229 N.J. at 381, we conclude defendant's newly-minted contentions lack sufficient merit to warrant discussion in this written opinion. R. 2:11-3(e)(2). We add only the following brief remarks.

Defendant has provided no authority to support her argument that Tomasetti mistakenly failed to inquire whether she was impaired or lacked the capacity to waive her rights. The credible evidence in the record supports the trial court's findings that defendant's "senses were not impaired at the time that she gave this statement." Moreover, more than sixty years ago, our Supreme Court recognized "[a] confession made by a person while under the influence of drugs is not per se involuntary." State v. Wade, 40 N.J. 27, 35 (1963); see also State v. Warmbrun, 277 N.J. Super. 51, 64 (App. Div. 1994) (recognizing the mere fact of intoxication is insufficient to render a confession involuntary and inadmissible, where the defendant "was capable of communicating and . . .

responsive in answering questions"). We therefore discern no error, let alone plain error in the admission of defendant's statement. R. 1:7-5; R. 2:10-2.

III.

For the first time on appeal, defendant contends those portions of her statement to Tomasetti that reference her previous dealings with law enforcement and alleged drug addiction should have been excluded as prior bad acts evidence under N.J.R.E. 404(b). In the alternative, defendant contends the judge should have sua sponte issued a limiting instruction when defendant's statement was admitted in evidence and during the final jury charge.

Ordinarily, the admissibility of evidence during trial rests within "the sound discretion of the trial court," State v. Willis, 225 N.J. 85, 96 (2016), and this court will review a trial court's evidentiary ruling for abuse of discretion, State v. Green, 236 N.J. 71, 81 (2018). "However, that deferential approach is inappropriate when the trial court failed to properly apply Rule 404(b) to the evidence at trial." Ibid. Nonetheless, "if the party appealing did not make its objection to admission known to the trial court, the reviewing court will review for plain error, only reversing if the error is 'clearly capable of producing an unjust result.'" State v. Rose, 206 N.J. 141, 157 (2011) (quoting R. 2:10-2).

13

When a prosecutor attempts to present other-crimes evidence against a defendant, a rigorous four-factor test of admissibility must be satisfied under the criteria of State v. Cofield, 127 N.J. 328, 338 (1992) (establishing a four-pronged test for evaluating the admissibility of evidence under Rule 404(b)). Generally, evidence of "other crimes, wrongs, or acts" is not admissible, unless used for "proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident when such matters are relevant to a material issue in dispute." N.J.R.E. 404(b). Thus, the rule is one of "exclusion rather than a rule of inclusion." State v. J.M., 225 N.J. 146, 161 (2016) (quoting Willis, 225 N.J. at 100).

Accordingly, courts must exercise caution when deciding whether to admit such evidence because it "has a unique tendency to prejudice a jury." Willis, 225 N.J. at 97 (internal quotation marks omitted). Indeed, such evidence "has the effect of suggesting to a jury that a defendant has a propensity to commit crimes, and therefore, that it is 'more probable that he committed the crime for which he [or she] is on trial.'" J.M., 225 N.J. at 158 (quoting Willis, 225 N.J. at 97).

But as our Supreme Court more recently explained in State v. Weaver, 219 N.J. 131, 150-51 (2014), a "more relaxed" admissibility standard governs

14

so-called "reverse 404(b)" proof of a third-party's prior bad acts. Trial courts need only determine that "the probative value of the evidence is not substantially outweighed by any of the Rule 403 factors, which are 'undue prejudice, confusion of issues, or misleading the jury,' and 'undue delay, waste of time, or needless presentation of cumulative evidence.'" Id. at 151; see State v. Cook, 179 N.J. 533, 567 (2004).

In the present matter, defendant's alleged drug addiction and drug use, and prior contact with Tomasetti were introduced in evidence through defendant's custodial statement during the detective's direct examination. The State did not otherwise seek to utilize defendant's "prior bad acts" in its case-in-chief. Accordingly, a limiting instruction under N.J.R.E. 404(b) was not warranted. See Model Jury Charges (Criminal), "Proof of Other Crimes, Wrongs, or Acts (N.J.R.E. 404(b))" (rev. Sept. 12, 2016).

Moreover, nearly half of defendant's custodial statement was redacted on consent of the parties, thereby removing irrelevant references to another robbery. Notably, defendant moved pretrial to exclude evidence of the safe under N.J.R.E. 404(b), but posed no objection – under that evidentiary rule or any other basis – to Tomasetti's fleeting remarks that he "spoke with [defendant]

before" and she needed help for her "problem."  Instead, defendant cited her alleged drug use in an apparent effort to minimize her culpability.

For example, as defendant acknowledges on appeal:  "Tomasetti confirmed during cross-examination that he believed the source of [defendant's] problems was her drug addiction."  In that regard, defense counsel elicited the following testimony from Tomasetti at trial:

> DEFENSE COUNSEL:  You indicated that when you were speaking to [defendant] . . . that you believed she needed to get help, right?
>
> TOMASETTI:  Yes.
>
> DEFENSE COUNSEL:  And that was because it was your understanding that she had a drug addiction, right?
>
> TOMASETTI:  Yes.  Yes.
>
> DEFENSE COUNSEL:  That she had been using drugs for some time, is that correct?
>
> DETECTIVE:  Yes ma'am.
>
> DEFENSE COUNSEL:  And . . . you expressed this to [defendant], that that was the source of her problems, right?
>
> DETECTIVE:  Yes.

Further, defense counsel attempted to elicit similar responses from Banks:

> DEFENSE COUNSEL:  I'm going to ask you a question . . . that's maybe a little awkward, but you knew that

16

[defendant] was using drugs at th[e] time [of the incident], correct?

BANKS:  Correct.

DEFENSE COUNSEL:  Okay.  And you knew that she had had an ongoing problem with drugs perhaps, right?

BANKS:  Correct?

DEFENSE COUNSEL:  And you understood that she was having someone come to the house to bring her drugs; is that what you recall?

BANKS:  No, I didn't know that's what it was about.  It was money.

And during summation, defense counsel argued:  "Now, we heard . . . that [defendant] was experiencing some issues at that time.  We know that she was using drugs at the time."  Counsel reminded the jury that defendant was visibly upset when she spoke with Tomasetti, "very cooperative" during his questioning, and did not "set up Antonio Banks to get hurt."  Notably, defendant neither raised before the trial court – nor this court – that her comment, "I did too many drugs" should have been redacted from her statement.

Defendant now argues "those prior bad acts were entirely irrelevant to the case and served no purpose other than to improperly show [defendant]'s claimed disposition towards criminal activity."  She belatedly argues the judge failed to "sanitize the evidence" and should have issued a limiting instruction explaining

17

the evidence "could not be used to show that [defendant] was generally a bad person and deserving of punishment."

Initially, we agree that the trial judge – although not requested by the parties to do so – should have issued a brief cautionary instruction when defendant's statement was admitted in evidence and during the final charge. That instruction simply should have informed the jury that it could not consider defendant's alleged drug use or contact with Tomasetti as evidence of guilt in this case. We are not convinced, however, that the omission of a curative instruction constitutes plain error that compels reversal under the circumstances of this case. R. 2:10-2.

Rather, as evidenced by defense counsel's strategic cross-examination and comments during summation, defendant's "prior bad acts" were utilized to portray defendant as a sympathetic, drug-addicted individual, who was incapable of injuring her friend. Defendant acquiesced in the admission of those references, while redacting copious portions of her statement that pertained to another crime. In that context, defendant "invited" the error of which she now complains. See State v. Santamaria, 236 N.J. 390, 409 (2019) (holding a defendant "cannot strategically withhold its objection to risky or unsavory

evidence at trial only to raise the issue on appeal when the tactic does not pan out").

In any event, the "more relaxed" admissibility standard applies here, where defendant utilized her alleged prior bad acts in her defense. <u>Weaver</u>, 219 N.J. at 150-51. <u>See also</u> <u>Model Jury Charges (Criminal)</u>, "Proof of Other Crimes, Wrongs, or Acts — Defensive Use (N.J.R.E. 404(b))," at 1 n.3 (approved May 22, 2000) (recognizing the "lower standard of admissibility – simple relevance – is required for defensive use of the evidence than for its use against the defendant"). Clearly, the probative value of the fleeting remarks referenced in defendant's custodial statement were "not substantially outweighed by any of the Rule 403 factors," such as, "undue prejudice, confusion of issues, or misleading the jury," and "undue delay, waste of time, or needless presentation of cumulative evidence." <u>Weaver</u>, 219 N.J. at 151

We conclude defendant's alleged prior bad acts were "simpl[y] relevant" to her defense. Accordingly, we discern no error, let alone plain error in the admission of her custodial statement that contained those references.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

19                                                         A-5841-17T4