**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2163-19

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

DIONTE POWELL, a/k/a
DIONTE MONTEL POWELL,
DIANTE S. POWELL, HOTTIE,

     Respondent-Appellant.

_____

> Submitted March 16, 2021 – Decided March 31, 2021
>
> Before Judges Mawla and Natali.
>
> On appeal from the Superior Court of New Jersey, Law Division, Warren County, Indictment No. 13-09-0422.
>
> Joseph E. Krakora, Public Defender, attorney for appellant (Monique Moyse, Designated Counsel, on the brief).
>
> James L. Pfeiffer, Warren County Prosecutor, attorney for respondent (Dit Mosco, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Dionte Powell appeals from an October 1, 2019 order denying his petition for post-conviction relief (PCR).  We affirm.

We described the facts, which led a jury to convict defendant and a co-defendant, Tahir Sutton, of robbery, burglary, and other charges in a prior appeal as follows:

> In the early morning hours of March 15, 2013, two men wearing dark clothing, hoodies, masks, and gloves entered the employee breakroom of a convenience store gas station.  Both were carrying handguns and one held a backpack.  Once inside, the men encountered two employees and demanded money.  The two men took approximately $1000 from the employees and some cigarettes and cigar packages from the store shelves.  As the men ran from the store, one of them dropped his gun and a piece of it broke off when it hit the floor.  The man retrieved the gun, but left the broken piece behind.
>
> Approximately forty minutes later, a patrol officer using a radar device observed a car traveling over the speed limit.  The officer activated his overhead lights and siren, but the driver of the car refused to stop.  The officer pursued the vehicle until it crashed into a telephone pole.  Four occupants got out of the car and all but one ran away.  The officer was able to detain a female passenger.  The officer saw that the rear window of the car was broken, there was a small sledgehammer on the backseat, and the ignition had been broken with a screwdriver.  The officer also observed a backpack on the rear floor of the car.

2

At the police station, the female passenger identified [defendant] as the driver of the car and Sutton as one of the passengers. She told the police that she called [defendant] to ask for a ride to her mother's house. Shortly after she got into the car, the police chase began.

The police located the registered owner of the car, who gave his written consent to a police search of the vehicle and all of its contents, including "[a]ny and all containers found therein." Inside the backpack, the police found two handguns, packages of cigars and cigarettes, two ski masks, and other clothing. One of the guns was broken and the piece found at the store fit the missing part of the gun. Sutton's thumb print was found on the exterior of the car. DNA found on one of the ski masks matched Sutton, and DNA on the other mask matched [defendant]. DNA on cigarette butts found in the car also matched Sutton.

The police set up a surveillance outside the female passenger's home. At approximately 6:00 a.m., the police saw [defendant] and Sutton walking down the street. Their physical characteristics and clothing matched the robbery suspects. The police arrested defendants. A search incident to that arrest disclosed that each defendant was carrying approximately $500.

[State v. Sutton, Nos. A-5597-14 and A-0414-15 (App. Div. Sep. 22, 2017) (slip op. at 1-3).]

This appeal is related to a motion by defendant's counsel, joined by Sutton's counsel, on the first day of trial seeking to sever the trial and try each defendant separately pursuant to Bruton v. United States, 391 U.S. 123 (1968). Specifically, defendant's counsel argued Sutton's defense was that he conceded

3

to being in the vehicle but denied being at the robbery. Counsel expressed a concern either Sutton or his counsel in opening to the jury might inculpate defendant by stating defendant was present in the vehicle with him or that defendant committed the robbery. Counsel asserted Sutton's defense was "inconsistent with [his] theory of the case, that [defendant] was not in that vehicle. It sabotages my defense strategy." Defendant's counsel explained Sutton's concession was problematic because "when they are arrested and found together at 6:10 a.m. . . . there is overwhelming inference drawn by the jury as to our clients being together in those moments beforehand when this alleged car chase took place that are incurable through any instruction as to confession."

The prosecutor opposed the motion and pointed out the female passenger who was apprehended following the chase would be testifying on behalf of the State "and she specifically puts [defendant] as the driver and . . . Sutton as being in the passenger seat." The prosecutor argued even if Sutton or his counsel implicated defendant, Sutton would be subject to cross-examination and confronted with the fact he had implicated defendant previously and the judge could cure any statement by Sutton's counsel by reminding the jury that counsel's comments are argument and not evidence. The prosecutor concluded "[s]o the only thing that these[] jurors . . . are going to be permitted to do, is

4

consider the evidence as against both defendants." The prosecutor also argued severance was improper because "[t]he evidence . . . in this case would be identical in both trials."

The trial judge denied the motion and made detailed findings, explaining his decision as follows:

> In this case, pending for two years and two days now, the [c]ourt is asked to sever . . . [defendant]'s trial from that of co-defendant Sutton on the day trial is to begin.
>
> The initial application is made on Bruton principles, somewhat loosely applied. . . . [I]n Bruton . . . the United States Supreme Court indicated that an incriminating extrajudicial statement of a co-defendant denies the defendant the right of cross-examination. That is to say where one defendant in a pretrial extrajudicial statement implicates himself and incriminates his co-defendant, the co-defendant is denied his right of confrontation because he cannot cross-examine his co-defendant on the pretrial extrajudicial statement.
>
> Here, the confrontation clause problem is not implicated. There is no out-of-court statement or a core confession of . . . Sutton which in any way implicates [defendant].
>
> Here, what we have is speculation as to what counsel may concede in an opening statement on behalf of . . . Sutton, coupled with the vague fear that . . . as counsel frames it — confession or concession, could possibly implicate [defendant].

 A-2163-19

The evidence that defendant . . . fears is not part of the State's case, and if a concession is made by . . . Sutton's counsel in his opening statement, that's not evidence, and the jury will be told that what counsel say in opening statements or in closing is not evidence and is not to be considered by them as evidence of anything.

The only real problem faced by [defendant] is if . . . Sutton gets on the stand and implicates him in a third-party- or co-defendant-guilt defense. But if . . . Sutton does that, the confrontation clause is not implicated because Mr. Sutton is then subject to cross-examination by counsel for [defendant].

. . . .

In this case, the defense of [defendant] and the defense of . . . Sutton are identical. Each separately and in his own right defends the case on the basis that I wasn't there[,] and I didn't do it.

If . . . Sutton says that, or that is his strategy at trial, that does not mean that the jury, in order to believe . . . Sutton's defense, must find . . . [defendant] guilty. That is the sort of mutual [exclusivity] which requires or permits severance.

There is nothing here so antagonistic or [irreconcilable] about these two defendants' defense strategies as to make severance necessary.

. . . [Defendant's] right to receive a fair trial, is not jeopardized in this situation. Here, for whatever the defense strategy of . . . Sutton is, or may turn out to be, there is no reason to believe at this juncture that the defenses are so antagonistic, mutually exclusive or irreconcilable as to require severance.

6

A-2163-19

This jury can return a verdict against one defendant or both defendants by believing one, the other, neither, portions of both, or indeed could return a verdict of not guilty by believing both completely. Under those circumstances, defenses are not mutually exclusive.

When balancing the speculative prejudice occasioned by an unarticulated inchoate defense, the [c]ourt favors the general preference to try co-defendants jointly because much of the same evidence is needed to prosecute each defendant in order to accomplish judicial economy, accommodate witnesses and victims, avoid inconsistent verdicts, and to facilitate an accurate assessment of relative culpability.

It is . . . an insufficient basis to grant a motion for a severance because a separate defendant has a better shot at an acquittal if he is tried alone.

The danger of guilt by association that adheres in joint trials is not in itself sufficient to justify a severance, particularly where proper instructions to the jury can preserve the separate status of a co-defendant. In point of fact, the [c]ourt has already, even prior to the making of this motion, laid that groundwork by stressing on a number of occasions during voir dire the fact that these two individual defendants must be judged separately by the jury based upon the evidence applicable to each of them individually.

. . . .

[I]f the jury accepted Sutton's concession that he was in the car, the jury is not thereby required to find [defendant] guilty of any of it. . . .

A-2163-19

There is nothing conflicting which has been laid upon this record . . . to establish mutually exclusive defense positions. Nothing suggests that a jury will ultimately be presented with a choice between two defendants' conflicting accounts. Indeed, . . . there are no accounts, conflicting or otherwise. . . . There are no statements by one defendant which could be considered self-incriminating and implicating the other, and there is no inevitable conclusion that because Sutton was in an automobile, allegedly operated by [defendant], that . . . [defendant] is guilty of eluding or of any of the other crimes charged against him.

The Court has considered . . . State [v.] Johnson[,] 274[] N.J. Super. 137 [(App. Div. 1994)]. That . . . case . . . stands for the proposition that even where one defendant seeks to avoid responsibility by placing guilt directly on a co-defendant is not sufficient to grant severance. A severance should be granted only when co-defendants' defenses are antagonistic and mutually exclusive. The mere existence of hostility, conflict or antagonism between defendants is not enough, and not even that has been shown thus far.

To be mutually exclusive, the jury's universe of choices must be limited to believing only one defendant or the other, and finding only one defendant guilty. Here, the jury can return a verdict against one defendant, both defendants, or both defendants by believing neither, or by believing portions of both, or believing both completely. In that case, the defendants are not mutually exclusive. Application for severance, therefore, is denied.

At the trial the State presented a witness placing both defendant and Sutton inside the vehicle, Sutton did not testify, and his counsel made no

A-2163-19

statements to the jury implicating defendant.  Defendant and Sutton both appealed from their convictions and sentences.  On appeal neither raised the severance issue.  Sutton, (slip op. at 5-7).  We affirmed in part, and reversed and remanded in part for reasons unrelated to this appeal.  Id. at 14.

In March 2019, defendant filed his PCR petition.  He argued

> the trial court's decision to deny his motion to sever . . . was plain error, and that therefore there is a reasonable probability that if this had been raised on appeal the result would have been reversal of his conviction.  This position is based on . . . [defendant's] contention that his defense and that of . . . Sutton were mutually exclusive:  Sutton's defense was that he was in the Jeep that was the subject of the car chase noted above, but that he did not take part in the robbery; on the other hand, [defendant's] defense was that he was neither in the car, nor did he take part in a robbery.  Since the two were arrested together at 6:00 that same morning, . . . [defendant] maintains that the jury could only infer that they were together when the crimes were committed, as well.

Defendant maintained his claim was prima facie evidence of ineffective assistance of appellate counsel, he was entitled to an evidentiary hearing, and his petition was not procedurally barred because it was cognizable under Rule 3:22-4(c).

The PCR judge denied the petition without an evidentiary hearing and made the following findings:

9

Following [the] conviction, [defendant]'s appellate counsel was successful on a number of very critical issues dealing with jury instructions which caused the Appellate Division to remand the issues before them to the trial court to either retry on those issues or to accept another tailored guilty plea. The end result of the issues which the Appellate Division did decide was that instead of a consecutive sentence, as previously imposed, there was a concurrent sentence imposed. The difference is obvious, even to [defendant].

There then came the final issue that this [c]ourt is aware of . . . the [Bruton] issue which . . . was really not a [Bruton] issue to begin with. It was fear of [defendant]'s attorney that the codefendant's counsel, in his opening statement to the jury, may have said or may say that . . . Sutton was with [defendant.]

[Defendant's attorney] argued that before [the trial judge]. [The trial judge], I think had, in my opinion, a relatively thorough discussion of the issues, . . . [and] indicated that if the attorney . . . in fact, would say that in an opening statement, he would cure by the instruction that an attorney's opening statements are not evidence, they are argument, and the jury must keep them in that perspective.

. . . [B]efore the trial even started, . . . [the trial judge] indicated that even at the conclusion of the trial, [he] would again instruct the jury that this is an armed robbery case and each defendant must be judged separately on the evidence which is presented to the [c]ourt. Now there was a third-party witness who did identify both of these people were together, including [defendant], at some time around the time of this robbery.

10

The issue today is the ineffective assistance of . . . appellate counsel for failure to pursue the [Bruton] issue[.] [W]hen at trial, [d]efense [c]ounsel, if he had thought it was critical issue after discussing it with the [j]udge and [c]o-counsel, would have or could have filed an . . . interlocutory appeal to have that decision reviewed. That was not done. It was only done after the appellate counsel had relatively successfully represented [defendant] and . . . failed in what this [c]ourt believes was an exercise of strategy and knowing that appellate counsel need not raise every issue that is possible but only those issues upon which appellate counsel feels that it has a chance of success on.

Again, an appellate counsel would have read the same record that the[c]ourt read. And having done so, he decided not to do that. That certainly is not sufficient level to raise to ineffective assistance of counsel when, in fact, the . . . opined damage that was going to be done never happened. The attorney did not say in his opening anything that would require[] an instruction by the [j]udge. Therefore, the [c]ourt finds that the appellate counsel's decision not to pursue the [Bruton] issue was not ineffective assistance of counsel but a matter of strategy which the counsel opposed.

Defendant raises the following point on appeal.

POINT ONE: [DEFENDANT] IS ENTITLED TO AN EVIDENTIARY HEARING ON HIS CLAIM THAT HIS APPELLATE ATTORNEY RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL FOR FAILING TO APPEAL THE DENIAL OF HIS MOTION TO SEVER.

11

I.

A defendant asserting a claim of ineffective assistance of counsel must satisfy the two-part test established in <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984), and later adopted by our Supreme Court in <u>State v. Fritz</u>, 105 N.J. 42, 58 (1987). Under that test, a defendant first "must show that counsel's performance was deficient." <u>Strickland</u>, 466 U.S. at 687. The defendant must establish that the attorney's performance "fell below an objective standard of reasonableness" and that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Id.</u> at 687-88.

The defendant also must show "that the deficient performance prejudiced the defense." <u>Id.</u> at 687. To establish prejudice, the defendant must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the matter. <u>Id.</u> at 694.

An evidentiary hearing on a PCR petition is required only when the defendant presents a prima facie case for relief, the court determines that there are issues of material fact that cannot be resolved by reference to the existing

12

record, and the court determines that an evidentiary hearing is required to resolve the issues raised. State v. Porter, 216 N.J. 343, 354 (2013) (citing R. 3:22-10(b)). "A prima facie case is established when a defendant demonstrates 'a reasonable likelihood that his or her claim, viewing the facts alleged in the light most favorable to the defendant, will ultimately succeed on the merits.'" Id. at 355 (quoting R. 3:22-10(b)). When an evidentiary hearing has not been held, we "conduct a de novo review of both the factual findings and legal conclusions of the PCR court[.]" State v. Harris, 181 N.J. 391, 421 (2004).

Courts apply a strong presumption that defense counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690. "The test is not whether defense counsel could have done better, but whether he [or she] met the constitutional threshold for effectiveness." State v. Nash, 212 N.J. 518, 543 (2013).

## II.

Defendant asserts he made a prima facie case of ineffective assistance of appellate counsel and because his claim relies on evidence outside of the record, he was entitled to an evidentiary hearing. He argues his defense was "unquestionabl[y] mutually exclusive" from Sutton's defense since defendant's

13

defense was that he was not in the vehicle or at all involved in the robbery, whereas Sutton conceded he was in the vehicle because of the forensic evidence placing him in it. Defendant argues because he and Sutton were arrested together, "this meant that Sutton's defense would also link [defendant] to the Jeep; this would inculpate [defendant] and contradict [his] defense that he was not in the Jeep, making the defenses irreconcilable." Defendant also argues the timing of his and Sutton's arrest contradicted defendant's defense that he was not in the vehicle.

A trial judge deciding a motion to sever must "balance the potential prejudice to defendant's due process rights against the State's interest in judicial efficiency." State v. Brown, 118 N.J. 595, 605 (1990) (citing State v. Coleman, 46 N.J. 16, 24 (1965), cert. denied, 383 U.S. 950 (1966)). "A joint trial is preferable because it fosters the goal of judicial economy and prevents inconsistent verdicts." State v. Weaver, 219 N.J. 131, 157 (2014). The test for granting severance is rigorous. Brown, 118 N.J. at 605-06. "The mere existence of hostility, conflict, or antagonism between defendants is not enough." Id. at 606. A mere risk of prejudice is insufficient to warrant severance as the defendant must show actual prejudice. State v. Moore, 113 N.J. 239, 274 (1988). "Separate trials are required only when defendants 'present defenses that are

antagonistic at their core.'" Brown, 118 N.J. at 606 (quoting United States v. Berkowitz, 662 F.2d 1127, 1134 (5th Cir. 1981)).

"When [a] defendant's defense strategy is antagonistic at its core to the defense strategy of his co-defendant so that the jury could only believe one of them, severance is in order." Weaver, 219 N.J. at 157. However, "[i]f the jury can return a verdict against one or both defendants by believing neither, or believing portions of both, or, indeed, believing both completely, the defenses are not mutually exclusive." Brown, 118 N.J. at 606.

Defendant's appellate counsel was not ineffective for failing to raise the denial of the severance motion on appeal because there was no probability such a motion would have been successful or would affect the outcome if it had been granted. As the trial judge found, the evidence in both cases was identical, and defendant's presence in the Jeep did not rely on Sutton's concession but instead was based on the testimony of a third-party witness. Therefore, conducting two trials would be contrary to the goal of achieving judicial economy.

More importantly, defendant and Sutton's defenses were not mutually exclusive. Although Sutton's defense counsel conceded he was in the vehicle, the concession did not render Sutton's defense antagonistic to defendant's because there was no testimony from Sutton or comment by his counsel that

defendant was in the vehicle as well. Therefore, the jury could have believed or disbelieved all or a portion of defendant's and Sutton's defenses without either defendant's theory prejudicing the defense of the other. Furthermore, both defendant and Sutton maintained they did not commit the robbery.

The vehicle chase ended at approximately 2:00 a.m. and defendant and Sutton were arrested four hours later at a different location. Therefore, the jury could have believed Sutton was in the Jeep and committed the robbery, defendant was not in the Jeep and did not commit the robbery, or Sutton and defendant were both in the Jeep and neither committed the robbery.

An evidentiary hearing was unnecessary because no other facts could be adduced to demonstrate the severance motion was viable. For these reasons, defendant did not demonstrate a prima facie case of ineffective assistance of appellate counsel. To the extent we have not addressed an argument raised by defendant it is because it lacks sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION